Argued April 22, affirmed as modified May 27, 1975

IN THE MATTER OF THE DISSOLUTION OF THE MARRIAGE OF
CAVILEE, *Respondent, and*
CAVILEE (No. 82840), *Appellant.*
535 P2d 774

*Ralph C. Spooner,* Salem, argued the cause for appellant. With him on the brief was Bruce W. Williams, P.C., Salem.

*John L. Hemann,* Salem, argued the cause for respondent. With him on the brief were Garrett, Seideman & Hemann, Salem.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

LANGTRY, J.

■ Appellant-husband seeks review of a supplemental dissolution decree providing for the division of the marital estate, requiring him to make monthly child support payments, and awarding respondent-wife attorney fees. Husband was granted custody of the parties' son (age 13), and wife that of their daughter (age 14), in a decree dissolving the marriage entered May 3, 1974, neither party appealing therefrom. Our review is de novo upon the record, consisting of a "trial anew in the fullest sense," with the findings of the trial court being given no weight except on disputed questions of fact where credibility of witnesses is the issue. *Wright and Wright,* 13 Or App 101, 508 P2d 829 (1973); *Emery v. Emery,* 5 Or App 133, 481 P2d 656, Sup Ct *review denied* (1971); *Hannan v. Good Samaritan Hosp.,* 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971).

The parties were married in 1960, with neither owning any substantial assets. During the first years of the relationship husband was regularly employed as a construction worker. Within four years, however, he was required to undergo back surgery necessitated by an aggravated birth defect, and did not work for a period of approximately one year thereafter. While employed as a laborer for a dredging company during May of 1969, husband suffered an industrial accident which also required surgical treatment. From the time of that accident husband (age 35 at the time of dissolution) has been unable to maintain steady employment

of any kind and has relied upon monthly disability payments from the Veterans' Administration as his sole source of income. Employed for over half of the marriage as a receptionist, bookkeeper and accounting clerk, wife (age 31) provided the bulk of the family support from the time of the accident in 1969 until relieved of a position with the city of Salem in mid-January 1974.

In exchange for a release of all claims arising from the industrial mishap, the parties received a lump sum settlement on November 6, 1973 which, after deductions for attorney fees and medical bills, amounted to approximately $55,000. Some $15,000 was utilized to pay outstanding obligations, to purchase a pickup truck and camper, and to open a savings account with a balance of $3,000, the remaining $40,000 being placed in time certificates.

The parties separated for the first time on December 2, 1973, executing what was purported to be a property settlement agreement formulated without the benefit of legal advice. According to the terms of that agreement, husband was to receive their new truck and the full $40,000 remaining from the settlement, while wife would maintain possession of the family home and automobile. Nearly $4,000 in checking and savings accounts were also apportioned between the parties at that time. On December 3, husband transferred $35,000 of the settlement funds to his brother Roscoe Cavilee in consideration for his promise to provide an annuity of $215 per month for the remainder of husband's life. On December 10, the pickup and camper as well as a boat, the title to which wife had shortly beforehand conveyed to husband, were transferred to Roscoe for nominal consideration; on the same day he received the last $5,000 held by husband, agreeing to repay that amount as husband's bills accrued.

Wife filed her initial petition for dissolution of the marriage on December 12, 1973. On May 3, 1974, following studies by the Family Court Service as to the relative fitness of the parties as parents and before the entry of any order by the circuit court, a motion was made for the filing of an amended petition joining Roscoe Cavilee as a party—wife alleging that the newly discovered conveyances to him were carried out with the intent and purpose of defrauding her of property rights in marital assets. That motion was granted and, as noted above, a decree dissolving the marriage, awarding custody of the children, and "continuing" all issues concerning the child support to be paid by either party, dividing the marital estate, and awarding attorney fees was entered that same day. A hearing on those matters "continued" was ultimately held on July 17, 1974, the decree challenged here being entered on September 30.

Conceding that the property division decreed by the circuit court provides him with the "long half" of the marital assets,[1] husband suggests that it was nonetheless "inequitable and inappropriate" in two re-

---

[1] Holding husband's transfers of property to Roscoe Cavilee to be "invalid" as against wife, the circuit court incorporated the following allocation of marital property into its decree:

To Wife:

Full interest in the family home, approximate value $19,000 subject to a mortgage with a balance owing of $9,400.

All of the furniture, fixtures, appliances and household effects except that awarded to husband.

A 1968 Chevrolet automobile.

A coin collection.

Personal effects.

A lump sum of $7,500 in lieu of any and all further interest in the marital assets.

To Husband:

Sword, San Francisco painting, Kenneth Scott Cavilee's bedroom furniture, Motorola television, antique clock, two

spects: (1) the award to him of savings and checking accounts which had been totally depleted by the parties prior to the entry of the decree, and (2) the inclusion of the industrial accident settlement as an asset of the marriage for purposes of determining an appropriate apportionment between the parties.

■ Although the decree appealed from is somewhat ambiguous with respect to the savings and checking accounts awarded to husband,[2] we are satisfied that the division ordered by the circuit court was one designed "to put the parties in a position financially, in so far as is possible, that they would have been in had the marriage not been dissolved * * *," *Wirthlin and Wirthlin,* 19 Or App 256, 258-59, 527 P2d 147 (1974), and that it should, therefore, be affirmed.

barber mirrors, stereo, new rocker, three end tables, the new nine-foot sofa and matching loveseat, the washer and dryer.

The pickup, camper, boat, motor and trailer, subject to any encumbrances thereon, approximate value in excess of $5,000.

Funds in the checking and savings accounts held by husband.

Husband's life insurance policies (total face value $30,000).

Funds in the hands of Roscoe Cavilee, other than those awarded to wife.

Husband's guns, gun cabinet, and adding machine.

Personal effects.

The failure of either party to introduce evidence from which we might have calculated the value of many items allocated by the court has rendered our estimation of the relative value of the total awards granted each party somewhat difficult; that evidence available, however, indicates husband received over 60 percent of the marital estate.

[2] The decree of the court included a finding that the parties had, among other things, accumulated

"[f]unds *presently held by* [husband] in Checking and Savings Accounts *in excess of $3,500.00.*" (Emphasis supplied.)

during the marriage. The specific award to husband was, however, simply of

"[f]unds in the Checking and Savings Accounts presently held by the [husband]."

512

■ If we credit the accounts awarded to husband with absolutely no value as he suggests ought to be the case, it is evident that the relative distribution of property is not changed in any substantial way. Husband retains close to 70 percent of the marital estate, a disproportionate but not inequitable share where, as in *Wirthlin*, it is he who, because of a limited future earning capacity resulting from his physical disability, needs the "long half" of the assets.

■ Neither do we find the award to wife of a portion of the industrial accident settlement to be either inappropriate or inequitable under the circumstances of this case. Husband argues that the settlement should have been disregarded as an asset by the court because it represents compensation for his pain, future medical expenses and wages. The record in this case indicates, however, that the settlement involved represented compensation for—among other things—any cause of action which wife, as well as husband, might have acquired against the employer as a result of the accident.[9] Thus, the funds acquired as a result of that settlement were properly included among the "personal property * * * of either or both of the parties * * *"[4] which the court was authorized to divide. *Cf. Dietz and Dietz*, 271 Or 445, 533 P2d 783 (1975); *Vetter and Vetter*, 16 Or App 634, 520 P2d 364 (1974). The factors to be considered in the attempt to devise a property division "just and proper" in the circumstances of each case have been enumerated repeatedly by this court;[5] it is apparent to us that those fac-

---

[9] *Both* husband and wife were apparently required by husband's attorney to sign a "Release of All Claims" as a precondition to receipt of the settlement funds.

[4] ORS 107.105(1)(e).

[5] *See* Nolan and Nolan, 20 Or App 432, 532 P2d 35, Sup Ct *review denied* (1975); Dietz and Dietz, 19 Or App 334, 527 P2d 427 (1974), *rev'd on other grounds* 271 Or 445, 533 P2d 783 (1975); Ray v. Ray, 11 Or App 246, 502 P2d 397 (1972); Stettler v. Stettler, 2 Or App 119, 467 P2d 130 (1970).

tors were properly taken into account in this instance.[6]

██ Despite our finding that the property division decree below was appropriate *and* the fact that the circuit court judge specifically indicated such a division would—in his opinion—be sufficient to enable husband to pay toward the support of the child in the custody of wife, we are compelled by the peculiar facts of this case to eliminate the provision of the decree requiring husband to make child support payments of $75 per month. In exercising its authority to order the contribution of a "just and proper" amount for the support and welfare of a child of the marriage by a noncustodial parent,[7] a circuit court ought to make an attempt to balance the needs of the child or children involved against the financial conditions and capabilities of both the noncustodial and the custodial parents.[8] In this case *both* parties have been awarded the custody of an adolescent child, imposing upon

---

[6] In a letter opinion the circuit court judge noted that in addressing the issue of the division of the assets he had taken into consideration

"* * * the duration of the marriage (approximately 14 years), the fact that neither party brought any substantial assets into the marriage, the fact that each of the parties was employed during part of the marriage, the fact that during the last four years of the marriage the major part of the support of the marriage was derived from [wife's] earnings, that the source of the major part of the assets came from the $55,000.00 [husband] received from the settlement for injuries received in the industrial accident he suffered in 1969, the fact that [wife] is in excellent health with employment experience and skills, the fact that [husband] is disabled and not employable without training as might be offered by the Oregon State Department of Vocational Rehabilitation and the fact that [wife] has remarried.

"* * * * *."

[7] ORS 107.105(1)(b).

[8] Dietz and Dietz, 19 Or App 334, 527 P2d 427 (1974), *rev'd on other grounds* 271 Or 445, 533 P2d 783 (1975); Newman v. Newman, 8 Or App 220, 493 P2d 71, Sup Ct *review denied* (1972).

each financial burdens of comparable proportions. The evidence in the record before us indicates that it is wife rather than husband who will best be able to meet those burdens in the immediate future. Wife's earning capacity exceeds that of husband. Even though wife testified that she had no plans to return to work in the near future, evidence in the record shows that her available income is and will remain substantially greater than that which husband currently receives or can expect to receive in the future without invading his capital, i.e., the funds remaining from the settlement awarded to him. We are convinced that, although husband might—due to the large share of the marital estate awarded to him—be capable of making child support payments, the interest of *both* children involved here would best be served by requiring each party to provide for the support and maintenance of the child in his or her custody. *Cf. Waymire and Waymire,* 17 Or App 562, 522 P2d 1394 (1974).

■ Husband argues it was error to award wife $1,500 in attorney fees. Husband asserts that wife "is in materially better economic condition than [husband] to pay her own attorney fees when the total financial resources of both parties are compared * * *." This argument is substantially the same as that concerning the child support. Although we found it persuasive with respect to those payments, we also find that division of the property appears to have been effectively designed to provide husband with the assets from which necessary attorney fees could be paid. The award was within bounds of the court's discretion. *Bohren v. Bohren,* 243 Or 237, 412 P2d 524 (1966); *Marrs and Marrs,* 20 Or App 320, 531 P2d 713, Sup Ct *review denied* (1975); *Vetter and Vetter,* 16 Or App 634, 520 P2d 364 (1974).

Affirmed as modified.