# In the Matter of the Dissolution of the Marriage of
## McCOY, *Respondent—Cross-Appellant,*
### *and*
## McCOY, *Appellant—Cross-Respondent.*
### (No. 398-234, CA 5841)
562 P2d 207

Patrick M. Smith, Portland, argued the cause for appellant—cross-respondent. With him on the briefs were Dennis F. Todd and Smith, Todd & Ball, P.C., Portland.

Robert A. Bennett, Portland, argued the cause for respondent—cross-appellant. With him on the brief was Willner, Bennett, Riggs & Skarstad, Portland.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

JOHNSON, J.

## JOHNSON, J.

Both parties appeal the dissolution of marriage decree. The wife appeals the division of property award. The husband contests the award of the residence to the wife, permanent spousal support and attorney fees. The parties had been married for 23 years. The husband is 61 and the wife is 55.

During the marriage they had acquired assets having a value of somewhere between $714,000 and $865,000. The trial principally consisted of the conflicting testimony of experts concerning the value of assets in the marital estate. A summary of that testimony and the division decreed by the court is as follows:

| Description of Property | Wife's Evaluation | Husband's Evaluation | Decree |
|---|---|---|---|
| Residence | $ 36,500 | $ 36,500 | Wife. |
| McCoy Oil Co. and attendant real property | 540,000 | 250,000 | Husband, subject to $50,000 judgment payable in 10 years at no interest. |
| 19 acre farm in Hood River County | 34,000 | 74,000 | Divided equally as tenants in common. |
| 160 acre ranch in Scio, Oregon | 96,000 | 210,000 | Divided equally as tenants in common. |
| Motel at Lincoln City | 79,100 | 119,000 | Wife. |
| Bank Accounts | 15,209 | —0— | Husband. |
| Miscellaneous stock and tax refund | 23,944 | 22,393 | Divided equally. |
| Miscellaneous personal property | 2,778 | 2,778 | Wife. |

The court awarded the wife spousal support of $1,000 per month and attorney fees of $10,000.

The wife contends, based upon the testimony of her experts and discounting for no interest the value of the $50,000 judgment, that her share of the property was $398,000 less than the husband's. The parties apparently concede under the circumstances of this marriage that there should be an approximately equal

division of the assets. We believe the trial court attempted to achieve that objective.

This case presents difficult questions on review primarily because of the large differences in values testified to by the parties' experts. This court believes that there are alternative solutions for resolving the evaluation dispute and accomplishing an equitable division of the property. This necessarily raises the question of what this court's role is on de novo review.

At first blush it would appear that Oregon courts have not been consistent in articulating that role. Opinions are replete with statements that the trial court will not be overruled unless there is "clear abuse" or "abuse of discretion." *E.g., Hofer v. Hofer,* 247 Or 82 at 86, 427 P2d 411 (1967); *Smith v. Smith,* 212 Or 654 at 656, 320 P2d 1111 (1958); *Duvall and Duvall,* 26 Or App 99 at 102, 551 P2d 1319 (1976); *Lairson and Lairson,* 15 Or App 340 at 342, 515 P2d 728 (1973). Other cases state that the trial court's "determination will not be disturbed unless it is clearly erroneous." *Sandner v. Sandner,* 243 Or 349 at 350, 413 P2d 424 (1966); *Barone v. Barone,* 207 Or 26 at 33, 294 P2d 609 (1956). In a recent decision the Supreme Court states that "we are not inclined to overrule the trial judge unless it clearly appears that he is wrong." *Settle and Settle,* 276 Or 759 at 772, 556 P2d 962 (1976). Other cases appear to refute these tests, stating:

> "* * * Our review is de novo upon the record, consisting of a 'trial anew in the fullest sense,' with the findings of the trial court being *given no weight* except on disputed questions of fact where credibility of witnesses is the issue." (Emphasis supplied.) *Cavilee and Cavilee,* 21 Or App 506 at 508, 535 P2d 774 (1975). *See also Emery v. Emery,* 5 Or App 133 at 135-36, 481 P2d 656 (1971).

This superficial inconsistency exists only when the dual functions that appellate courts must perform in equity cases are ignored. In actions at law these dual

roles are defined in terms of reviewing questions of fact and law. The separation is more complex in equity proceedings. Appellate review of factual questions is broader. De novo review in equity of legal questions is not merely to determine whether the lower court erred as to a rule of law, but encompasses the fashioning of equitable remedies. Such fashioning often involves a selection from a broad range of alternatives. For example in a division of property dispute such as here, courts have several alternatives. Initially, there must be a decision as to the appropriate division, i.e., should the assets be divided equally or should one party receive more than the other. Then follows decisions how to implement the division. The court can award specific assets to each party, create tenancies, either joint or in common, direct assets to be sold, establish trusts, or order spousal support as a means of balancing property interests.

On de novo review the appellate court not only has to review the lower court's findings of fact and whether the applicable rules of law have been applied, but also the fashioning and application of equitable remedies to those facts. Statements in cases like *Cavilee and Cavilee, supra,* that "the findings of the trial court being given no weight * * *" refer only to findings of fact and do not purport to address the question concerning the weight to be given to the lower court's selection of remedy.

■ The underlying principles of de novo review dictated by statute, ORS 19.125, and judicial decision are that the appellate court "has not only the right, but the duty" to make an independent study of the record and to exercise its independent judgment. The appellate court is not bound by the trial court. *E.g., Hannan v. Good Samaritan Hosp.,* 4 Or App 178 at 187, 188 and 192, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971). However, in the exercise of that judgment there are instances where weight is afforded the trial court both as to questions of fact and as to the application of equitable remedies.

With respect to questions of fact, *Cavilee* generally states the rule that the findings of the lower court are given little or no weight except where witness credibility is a significant issue. Deference is afforded the trial court because of its opportunity to see and hear witnesses. Conversely in workmen's compensation cases where the lower court is also reviewing the record de novo, we have held that little weight should be given. *Hannan v. Good Samaritan Hosp., supra.* Similarly, scant attention was afforded a circuit court's findings of fact where the deciding judge had not presided at trial but rather based his decision on the record made before another judge. *Omlie et ux v. Hunt,* 211 Or 472, 316 P2d 528 (1957).

■ There is an implication in *Cavilee* and other cases that weight shall be given the trial court's findings of fact only where there is a conflict of testimony over a disputed question of fact. *See also Hannan,* 4 Or App at 187. A more accurate statement of the rule is weight should be afforded to the trial court's findings any time the opportunity to see and hear witnesses is important. The amount of weight depends on the degree of importance. In this case we are confronted with conflicting testimony of appraisers and some weight should be given to the trial court's opportunity for observation. However, the manner and demeanor of this type of expert witness is probably less crucial to ascertaining credibility than is analysis of the witness' reasoning stated in the record.

On the other hand there are many situations where observing the witness may be vitally important although there is neither conflict in the testimony nor any substantial question of truth or falsity. This is particularly pertinent in domestic relations cases where delicate human relationships are at stake. The witnesses' sincerity, conviction, self-reliance or discipline, temperament, and other personality traits may be the pivotal concern. In *Rea v. Rea,* 195 Or 252 at

261, 245 P2d 884, 35 ALR2d 612 (1952), the court stated:

"* * * We are constrained to add however, that we have grave doubts as to whether any appellate court, acting on a cold record, is as likely to arrive at a wise decision concerning child custody, as is the trial judge who sees the parents, hears the testimony, and observes the child. It is for this reason that we have repeatedly held that the decision of the trial court is entitled to great weight in such cases. This court is ill-equipped to exercise a wise and humane discretion on a record which, of necessity, fails to disclose the subtle, but highly persuasive, evidences which are manifest to the trial judge. A wise appraisal of the character, fitness, emotional stability, affection, hostility, or motive, of the parties to a contested divorce case, who are competing for the custody of a child, or a like appraisal of the inner attitude of the child itself, requires more than can generally be made to appear on the printed page."

Appellate courts in Oregon have also consistently given weight to the trial courts in fashioning equitable remedies. In many instances deference is required because the remedy directly depends on weighing evidence where firsthand observation of witnesses is crucial. The awarding of child custody and visitation rights are obvious cases in point. *Rea v. Rea,* supra. Similarly, in a spousal support dispute the best evidence for determining whether a party's alleged ailments are a fanciful or real impediment to employment is the trial judge's opportunity to observe the party. In this case two possible alternatives for resolving the evaluation dispute over the family business would be to continue the parties as co-owners or to require sale of the business and division of the proceeds. The former solution may be untenable if the parties' differences are so irreconcilable that they cannot continue to do business together. The latter solution would solve the valuation problem but may work an injustice on the husband if sale of the business would deprive him of his occupation. By

observing the parties the trial court is often in a more advantageous position to make such judgments.

Consideration is also afforded the lower court's decision for reasons of judicial administration. It is not the policy of the law to make appellate review a matter of course where the losing party below automatically gets another chance to make his case. While de novo review may be characterized as a trial anew, the burden is on the appellant to show that the lower court made a mistake. Where there are viable alternatives available, often no two courts can agree which is the preferable. There is often no perfect remedy, but merely a choice between several "dull axes." *See Wirthlin and Wirthlin,* 19 Or App 256, 527 P2d 147 (1976). The role of the appellate court is not to substitute its preferences for that of the lower court. In this case the trial court has attempted to divide an array of marital assets. We may prefer reshuffling but should be reluctant to do so unless our preference is motivated with sufficient conviction to proclaim that the trial court made a mistake.

It is in the fashioning of equitable remedies that appellate courts have used such terms as "clearly erroneous" and "abuse of discretion." Both terms have shortcomings. "Abuse of discretion" ordinarily refers to a situation where a court or administrative agency has exceeded its legal authority. On de novo review in equity the term is in part a recognition of the broad discretion that courts have in fashioning and choosing equitable remedies. "No abuse of discretion" is merely a conclusion that the lower court's choice of remedies is within that parameter of choices that on de novo appeal the appellate court in exercising its independent judgment considers acceptable. Because of confusion with the ordinary meaning and its inherent inappropriateness, "abuse of discretion" has been avoided in most recent decisions. *Hannan,* 4 Or App at 189. The term "clearly erroneous" is a more accurate statement of the applicable standard, but is too easily confused with "clearly erroneous" standard under the

Federal Rules of Civil Procedure for appellate review of cases tried without jury. The federal courts correctly define "clearly erroneous" to mean substantial evidence which is not the Oregon standard for de novo review.[1]

In *Settle and Settle, supra,* the Oregon Supreme Court avoids this confusion by saying that "We are not inclined to overrule the trial judge unless it clearly appears he is wrong." This is the equivalent of saying that the appellate court will not disturb the lower court's selection of equitable remedies unless we are convinced that a mistake has been made.

■ In summary, the appellate court is not bound by the findings of fact of the lower court, must make an

---

[1] Rule 52(a) of the Federal Rules of Civil Procedure provides that a trial court's findings of fact in all cases tried without a jury shall not be set aside "unless clearly erroneous." The federal courts have concluded that appellate review in such cases is not de novo and appellate courts may not weigh the evidence. *Zenith Corp. v. Hazeltine,* 395 US 100, 123, 89 S Ct 1562, 23 L Ed 2d 129 (1968), *on remand* 418 F2d 21 (7th Cir 1969), *reversed* 401 US 321, 91 S Ct 795, 28 L Ed 2d 77 (1971); *Falcon Equipment Corp. v. Courtesy Lincoln Mercury,* 536 F2d 806, 808 (8th Cir 1976); *Lindsay v. McDonnell Douglas Aircraft Corporation,* 485 F2d 1288 (8th Cir 1973); *Manning v. Jones,* 349 F2d 992, 996 (8th Cir 1965); *Barryhill v. United States,* 300 F2d 690, 693 (8th Cir 1962). The drafters of Rule 52(a) never intended to adopt a substantial evidence test, but rather to incorporate the standard for de novo review followed by federal courts in equity cases prior to adoption of the Federal Rules of Civil Procedure. *See* 5A J. Moore, Federal Practice ¶52.01(4), at 2605 (2d ed 1975). Early decisions under the federal rules followed the drafter's intent. In *United States v. Gypsum Co.,* 333 US 364, 395, 68 S Ct 525, 92 L Ed 746 (1948), the Supreme Court stated:

"* * * The practice in equity prior to the present Rules of Civil Procedure was that the findings of the trial court, when dependent upon oral testimony where the candor and credibility of the witnesses would best be judged, had great weight with the appellate court. The findings were never conclusive, however. A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

This statement is wholly consistent with the standard of review followed by Oregon courts in equity cases. The federal courts as reflected in the above citations, however, subsequently departed from the quoted test in favor of a substantial evidence test, but still cite *Gypsum Co.* as a statement of the rule. To avoid compounding the confusion, we refrain from using the "clearly erroneous" language, although we believe our test is substantially the same as stated in *Gypsum Co.*

independent study of the record, weigh the evidence and exercise independent judgment. In the exercise of that judgment we will give due regard to the lower court's opportunity to see and hear witnesses and will not disturb the lower court's decision unless we are convinced that an equitable result has not been reached.

■ Having reviewed the record in this case, we are not left with a conviction that a mistake was made by the lower court except in two particulars. Any equitable division of the assets hinged on the disposition of the McCoy Oil Co. While the wife in the past had made some contribution to and is part owner of the business, the husband was the dominant figure, devotes to it most of his productive energies and the business' success is probably in great part attributable to his efforts. The dissolution of marriage probably requires dissolution of the husband-wife business partnership. To continue the wife's minority interest in the business or to make her an equal partner in all likelihood would be untenable for both parties. The lower court concluded the business should go to the husband. The wife does not contest the award, but the evaluation.

The trial court did not make specific findings regarding evaluation, but we assume it concluded that the actual value was somewhere between that contended by the experts for the parties. The real property has a value of at least $65,000. The company owns cash in the amount of $114,000; accounts receivable of $146,000; rolling stock having a depreciated book value of $58,000, and a new Lincoln Continental. In the last year the company had sales of $1.1 million and a net profit of $35,000. In view of these facts alone we believe that the valuation of $250,000 expressed by the husband's appraiser is conservative. The opinion expressed by the appraiser for the wife on the other hand appears optimistic. In his capitalization of earnings approach he relied only on the last year's earnings as compared to an average earnings approach taken by

one of the husband's appraisers. His evaluation of good will is questionable. He may have been justified in regarding a portion of the husband's bonus as corporate earnings, but we do not believe the entire bonus should be included.

In contrast in the contest over the value of the motel property, the appraiser for the wife was conservative and the husband optimistic. The wife's expert valued the property at a figure which was less than an arm's-length offer made on the property three years before. Her evaluation ignores economic realities.

We have analyzed the opinion testimony and the stated reasons offered at trial and conclude neither side's expert was totally believable. The trial court observed the witnesses and thus may be in a better position to make a determination of value. It would appear that the property division decreed by the trial court awarded a greater share to the husband, but substantially less difference than that contended by the wife on appeal. This accounts for the award of $1,000 per month to the wife as permanent spousal support. Considering the length of the marriage, the condition of the marital estate and other circumstances the award of spousal support was an appropriate method to achieve substantial parity between the parties. The spousal support provides the wife an assured income and if appraised as an annuity, would have substantial value.

We are however convinced that the trial court erred in two particulars. The $50,000 judgment payable in ten years at no interest does not make practical sense. It can be anticipated that the husband will not make any payment for the entire ten years and in the meantime can enjoy the use of the money. The wife's contention that the judgment's present value is only $27,000 seems reasonable. In making lump sum awards, courts should take into account the obligor's ability to make prompt payment, that the use of

money has value and that an obligee is ordinarily entitled to interest. The evidence in this case indicates that the husband probably can make prompt payment. We modify the decree to require payment of interest.

The decree also should be modified with respect to the residence. The husband contends that he should have both business and the residence. We disagree. The award of the residence to the wife was to effectuate an equitable division of property. On the other hand, consideration should be given to the fact that the husband is presently living in the house, conducts a good deal of business from there and the wife did not request the residence in her proposed distribution. Accordingly the husband should be allowed the right to purchase the house from the wife at the appraised value of $36,500 providing he exercises this right within 60 days after mandate.

Affirmed as modified. No costs to either party.

Thornton, J., concurs in the result.