Argued and submitted July 25,
affirmed as modified October 13, 1980

In the Matter of the Marriage of

GREEN,
*Petitioner,*
*and*
GREEN,
*Respondent.*
STATE ex rel GREEN,
*Respondent - Cross-Appellant,*
*v.*
GREEN,
*Appellant - Cross-Respondent.*

(No. D-8538, CA 15737)

617 P2d 925

Richard A. Uffelman, Portland, argued the cause for appellant - cross-respondent. On the briefs was Anthony A. Buccino, Portland.

Lee M. Zittenfield, Portland, argued the cause and filed the brief for respondent - cross-appellant.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

BUTTLER, J.

**BUTTLER, J.**

Both parties appeal from the order of the trial court in this modification proceeding relating to custody of their only child, a son. The trial court ordered custody changed from mother to father, but ordered visitation for mother from Wednesday to Saturday noon — in effect splitting the week between father and mother. We affirm, although we disapprove of this type of split-time arrangement for a young child.

The parties were married in 1973, and one child, Craig, was born to them on November 29, 1974. When the marriage was dissolved in March, 1977, the agreement of the parties was incorporated into the decree. That agreement provided for custody to be with mother, with reasonable visitation for father. After some initial troubles regarding visitation shortly after the dissolution, the parties worked out a schedule of weekly visitation in which father kept Craig for about 4 hours on Monday and Wednesday evenings while mother attended school, and from Friday evening until Saturday evening every weekend. This schedule worked out without major incident for about two years.

Since the dissolution, however, mother has experienced a number of significant changes in her life. She lived with one man for a time and then married another, in a marriage which lasted only a few months. She then began living with a Mr. Belschner, with whom she was residing at the time of the hearing. In July, 1979, she and Mr. Belschner had a daughter. Mother has two teenage children from a previous marriage. She had custody of those children during the marriage of the parties, and afterward, until her daughter ran away in late 1978 and her son ran away in early 1979. Custody of both of those children was then changed to their natural father.

In May of 1979, shortly before the birth of her infant daughter, mother left her job. About that time she halted the mid-week visitation between father and Craig. Shortly thereafter she cut off all contact with

father and refused to allow visitation or even telephone conversation between father and Craig. She testified that she felt it would be in Craig's best interest to do so because he was having trouble with toilet training and was displaying behavior problems upon return from visits with his father.

A psychologist, who testified for father at the hearing, expressed the opinion that the continual changes in the family situation in mother's life could have long term detrimental effects on Craig's ability to form attachments and establish relationships. We are persuaded, as was the trial court, that mother's attempt to terminate the relationship between Craig and his father and to substitute Mr. Belschner in the paternal role, along with the continual changes in mother's family situation, constituted a substantial change in circumstances. The trial court found that it would be in Craig's best interest to be in the custody of his father based on his emotional ties with both parents, the attitudes of the parents regarding Craig's emotional needs and father's expressed desire to foster Craig's relationship with his mother and half siblings.

■ ■ Although our review is *de novo,* we are not inclined to second guess the trial judge in child custody cases unless it clearly appears that he is wrong. *Settle and Settle,* 276 Or 759, 772, 556 P2d 962 (1976); *and see McCoy and McCoy,* 28 Or App 919, 562 P2d 207, *modified* 29 Or App 287, 563 P2d 738 (1977); *Whitlow and Whitlow,* 25 Or App 765, 550 P2d 1404 (1976). We cannot say that here, and accept the trial court's assessment that the best interests of the child call for changing custody to father. We affirm that portion of the order.

We have serous doubts, however, about the wisdom of the visitation arrangement which was ordered. We view the arrangement provided here, which neither party requested, as being particularly unsettling to a young child. We do not believe that requiring this young boy to change homes every three and one half days will provide the stability which we

have often recognized as being of paramount importance. *See Reflow v. Reflow, Seabert,* 24 Or App 365, 545 P2d 894, *rev den* (1976); *Ellenwood and Ellenwood,* 20 Or App 486, 532 P2d 259 (1975); *Smith v. Green,* 4 Or App 533, 480 P2d 437 (1971).

■     We are faced, however, with an order issued nearly a year ago which has not been stayed pending appeal to this court. Presumably, therefore, the child has been living under this arrangement for approximately a year. Notwithstanding our belief that the arrangement is unwise, it is at least conceivable that it has been working in the best interest of Craig. Without information as to how it has been working out pending appeal, we are reluctant to order a change. Accordingly, we affirm that portion of the order relating to visitation, but with the express proviso that either party may request a hearing in the trial court to determine whether the arrangement has been working in the child's best interests.[1] Change of custody, as such, will not be involved in the hearing.

■     Father also appeals the portion of the trial court's order requiring that he pay mother $50 per month in child suport. ORS 107.105(1)(b) provides that the court has power to decree

> "[f]or the recovery from the party not allowed the care and custody of such children, or from either party or both parties if joint custody is decreed, such amount of money, in gross or in instalments, or both, as may be just and proper for such party, either party or both parties to contribute toward the support and welfare of [their] children. * * *"

Father argues that because he was awarded custody of Craig the court had no authority to order him to pay support to mother, the noncustodial parent. We agree.

Affirmed as modified.

---

[1] Our disposition of this matter makes it unnecessary for us to reach an evidentiary error raised by father.