Argued and submitted April 11, the judgment of the Tax Court modified and the case remanded for recalculation of taxpayer's liability August 29, 1990

# Roland H. REED,
*Appellant,*

*v.*

# DEPARTMENT OF REVENUE,
*Respondent.*

(TC 2747; SC S35830)

798 P2d 235

Roland Reed, Milwaukie, argued the cause and filed the briefs *pro se.*

Jerry Bronner, Assistant Attorney General, Salem, argued the cause on behalf of respondent. With him on the brief was Dave Frohnmayer, Attorney General, Salem.

Before Peterson, Chief Justice, and Carson, Jones,* Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

GILLETTE, J.

Peterson, C. J., concurred and filed an opinion.

---

* Jones, J., resigned April 30, 1990.

### GILLETTE, J.

This case involves an appeal from the Oregon Tax Court concerning the appropriate amount of certain payroll deductions allowable to the plaintiff/taxpayer, Roland H. Reed (Taxpayer), as business expenses. Taxpayer filed a 1984 income tax return in which he claimed certain business expenses as deductions from his gross income. In 1986, the defendant Department of Revenue (the Department) audited Taxpayer's 1984 return and disallowed twenty-five percent of his claimed payroll business expenses. Plaintiff appealed to the Tax Court, which affirmed the Department's action. *Reed v. Dept. of Rev.*, TC 2747 (Nov. 29, 1988). Taxpayer now appeals to this court. In this purely factual dispute, we review de novo. ORS 305.445.[1]

### FACTS

We find the following facts, as also found by the Tax Court:

"Late in 1983 or early 1984, plaintiff started his own insurance agency employing two 'essentially' full-time employees and some part-time employees. Although initially successful, when the two primary insurance companies plaintiff used went bankrupt around mid-April or May of 1984, his insurance agency foundered. About the same time, plaintiff started a cleaning business under the assumed business name of Preferred Janitorial. Since plaintiff was a full-time employee of the City of Portland, he conducted these businesses in his spare time. Some of the insurance agency employees moved into the new janitorial business. By plaintiff's own admission, his primary concern was with the operation of the businesses and not with maintaining the business records. As a consequence, the records are disorganized, incomplete, frequently unidentified and so mixed with plaintiff's personal expenses that it is impossible for even plaintiff to be certain whether some expenses were for business or otherwise.

"Defendant commenced its audit of plaintiff in June 1986. At that time defendant requested plaintiff to furnish cancelled checks, receipts and other records to verify the itemized deductions. (Exhibit D.) In response to this request, plaintiff's wife brought in two shopping bags full of receipts, the

---

[1] The Tax Court considered other issues besides plaintiff's payroll deduction. However, plaintiff's appeal is limited to the payroll issue.

contents of which were unorganized and commingled. The auditor spent considerable time sorting and organizing the receipts. In comparing the receipts to plaintiff's ledgers, the auditor found that some entries were overstated and some were duplicated. The only documentation furnished in substantiation of plaintiff's payroll expenses for his two businesses were copies of the reports of wages paid (IRS Form 1099). Accordingly, the auditor wrote and asked for additional substantiation. (Exhibit E.) Plaintiff's written response essentially declined to furnish the information, asserting that the Form 1099 reports should be sufficient. A handwritten note at the bottom of the message also indicated that plaintiff had lost receipts in moving. (Exhibit F.)

"The auditor then exerted what the [tax] court views as extra effort in order to verify the Form 1099 information. Of the 27 Form 1099 reports filed by plaintiff,[2] defendant found that only 13 of the 27 employees had filed Oregon income tax returns. The auditor examined eight of the 13 returns filed and found that six reported less compensation than shown on the Form 1099 report filed by plaintiff.[3] It should be noted that defendant was substantially handicapped in this effort because of numerous errors in addresses, names, and social security numbers. Also, plaintiff had not filed any quarterly withholding reports or paid any withholding taxes, thereby further arousing suspicion as to the amounts paid. Persuaded that a problem existed, but unable to obtain information from plaintiff, defendant concluded that it must move ahead. Based upon examination of the available information, defendant allowed plaintiff only 75 percent of the claimed payroll expenses."

*Reed v. Dept. of Rev.,* TC 2747, slip op at 1-3 (Nov. 29, 1988).

## THE TAX COURT PROCEEDINGS

Taxpayer appealed to the Tax Court. Before the Tax Court, Taxpayer, for the first time, presented cancelled checks which he claimed were his 1984 payroll checks.[4] Taxpayer also introduced into evidence his 1984 business ledgers and some

---

[2] In our review of the record we find 1099 Forms for only 26 separate employees.

[3] This result is consistent with our own findings. However, because the employees' tax returns are confidential, the identities of the eight employees are not in the record and we can make no direct comparison.

[4] These checks total $13,992.74. Plaintiff's position before the Tax Court and before us is that he is entitled to a deduction of this full amount, not just the $11,598.34 he originally claimed on his tax return.

employee time cards. Although the Tax Court accepted these items into evidence, it did not thoroughly examine the evidence: "[t]he [Tax] court did not and will not audit every Form 1099 submitted by [Taxpayer]. It is satisfied that [Taxpayer] does not have sufficient cancelled checks to document the claimed expenses." *Id.* at 4-5. Instead the court limited itself to an examination of the evidence pertaining to four employees.[5]

In a tax case, the taxpayer bears the burden of proof and must demonstrate by a preponderance of the evidence that a deduction is allowable. ORS 305.427. In this case, Taxpayer furnished the Tax Court with a great deal of disorganized and incomplete documentation of his payroll expenses. Although it admitted the material into evidence, the Tax Court declined to examine this evidence thoroughly, apparently under the impression that it was not required to do so:

> "In this case, [Taxpayer] refused to produce the cancelled checks to support his position until he reached this court.[6] This is contrary to the statutory scheme and increases the state's cost of administering the tax laws. Normally, the court would have dismissed [Taxpayer's] appeal for that reason alone."

*Reed v. Dept. of Rev.*, TC 2747, slip op at 6 (Nov. 29, 1988). The Tax Court cited no authority for this position.

The statutory scheme permits the Department to require a taxpayer to produce all documents the Department deems necessary to conduct an investigation. ORS

---

[5] These employees were Chris Estes, Rebecca Lokting, Leslie Claridge, and Arlene Oliver. The first three are the employees for whom our review of the evidence produces the three most unfavorable results for Taxpayer. A review of the fourth, Arlene Oliver, would have produced favorable results for Taxpayer if the Tax Court had not focussed on two checks to Oliver which were clearly not payroll expenses. We set out our findings for Estes and Oliver in the Appendix.

[6] Taxpayer testified that he produced some of the checks prior to his appearance in Tax Court but failed to produce the rest in large part because they had been misplaced during a move and were only recently located. As this is a factual question based almost entirely on the credibility of witnesses, we accept the Tax Court's version of events. This determination does not affect the results of the case.

305.190(1).[7] If a taxpayer fails to comply, the Department may apply to the Tax Court for an order to produce. Failure to obey such an order is contempt of court. ORS 305.190(2). We do not find the alternative consequence selected by the Tax Court — disregarding evidence after admitting it — in the statutes.

█ █ In any event, the Tax Court did not dismiss the appeal. Therefore, it was required to conduct a trial de novo. ORS 305.425(1).[8] Although the burden of proof falls on the taxpayer to demonstrate that the Department's earlier decision was wrong, a trial de novo requires the Tax Court to consider all properly admitted evidence and reach its own independent conclusions. Of course, if the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof and the Tax Court's final judgment will affirm the Department's order. However, such was not the case here.

Taxpayer produced in the Tax Court a significant amount of new evidence. Under such circumstances, the Department's final order, which was merely an estimate made in the absence of hard proof, was unlikely to be exactly correct. The Tax Court, having admitted the evidence, was required to evaluate the evidence and reach its own conclusions.[9]

We understand the Tax Court's expressed concern over the behavior of Taxpayer:

"The [Tax C]ourt feels it is appropriate to comment on

---

[7] ORS 305.190(1) provides:

"The Director of the Department of Revenue, in conformity to the resolutions or rules of the department, may subpoena and examine witnesses, administer oaths and order the production of any books or papers in the hands of any person, company or corporation, whenever necessary in the prosecution of any inquiries deemed necessary or proper in their [sic] official capacity."

[8] ORS 305.425(1) provides:

"All proceedings before the court shall be original, independent proceedings and shall be tried without a jury and de novo."

[9] We express no view on whether the Tax Court could have instead rejected Taxpayer's proffered evidence on the ground that it had to be put *by the Taxpayer* into some minimally coherent form and, until it was placed in that form, it was not truly probative of the issues before the court. *See Haguewood and Haguewood,* 292 Or 197, 200, 638 P2d 1135 (1981) (" 'while de novo review may be characterized as a trial anew, the burden is on the appellant to show that the lower court made a mistake' " (quoting *McCoy and McCoy,* 28 Or App 919, 926, 562 P2d 207 (1977))).

> this case. It illustrates the need for strong and extensive education of the public with regard to Oregon's self-assessed income tax. [Taxpayer] placed himself at a disadvantage, first by keeping such poor records and, second, by exhibiting a strong emotional reaction to taxation. While the latter is an inalienable right of every citizen, it does not justify further breaches of the taxpayer's obligations."

*Reed v. Dept. of Rev.*, TC 2747, slip op at 6 (Nov. 29, 1988). We are not unsympathetic with the Tax Court's and the Department's problems in dealing with Taxpayer. Even at the Tax Court hearing, Taxpayer's statements, testimony, and arguments certainly were not models of clarity. But the evidence was presented and received. Therefore, it was the Tax Court's obligation to consider it. We turn to the evidence.

## THE STATE OF THE EVIDENCE

We have examined the evidence in detail to determine which of Taxpayer's claimed payroll expenses should be allowed. We have considered each document and its relationship to other documents in evaluating whether a particular expense has been shown by a preponderance of the evidence to be a payroll expense. Although Taxpayer now claims a deduction of $13,992.74, it is quite possible that Taxpayer incurred payroll expenses in excess even of this amount. However, the statutory scheme does not permit us to allow expenses that are merely "possible"; only those expenses proved by a preponderance of the evidence may be allowed.

Taxpayer produced four categories of payroll expense evidence. First, there are Taxpayer's copies of the Form 1099 reports of wages paid he issued to certain employees. Throughout these proceedings, Taxpayer claimed that the Forms 1099 are sufficient to document his payroll expenses. The Department and the Tax Court both correctly rejected this argument. Forms 1099 are informational forms filed with Internal Revenue Service. IRC §§ 6041(a) & 6041A(a). They are no more conclusive evidence of payroll expenses than a taxpayer's completed income tax form is conclusive proof of his income. Furthermore, Taxpayer's Forms 1099 sometimes bear no apparent relationship to any of Taxpayer's other evidence. On the other hand, some Forms 1099 match up exactly with cancelled paychecks. Those Forms 1099 we consider in conjunction with the other evidence.

Taxpayer also furnished some employee time sheets. Generally, we consider such time sheets to be good evidence that an employee has performed work for Taxpayer. Unfortunately, Taxpayer submitted few, if any, time sheets for many of his employees. Again, as with the Forms 1099, we primarily consider the time sheets in conjunction with other evidence.

■ Certain cancelled checks purporting to be payroll checks are Taxpayer's most important evidence. Obviously, a cancelled check is the best evidence that Taxpayer actually paid money to an employee. However, the mere existence of a cancelled check does not prove that it was payment of payroll. This is especially true because much of the money claimed by Taxpayer as payroll expense was paid to members of his own family, creating a danger that family expenses will be claimed and treated as business expenses. Fortunately, many of Taxpayer's checks have been labeled as payroll checks, with some even including specific notations as to time worked and hourly pay rates. Generally speaking, if a check is labeled as a payroll check, and its amount or date is not inconsistent with other evidence, we have accepted Taxpayer's claim that it was a payroll check. Of course, Taxpayer's claim is strengthened when the check can be matched up with other evidence, such as a time sheet.

Finally, the fourth major type of evidence furnished by Taxpayer is his business expense ledgers and listings. Taxpayer provided two sets of ledgers: one for Reed Insurance and the other for Preferred Janitorial. We find this evidence to be persuasive when it matches up with the cancelled checks discussed above.

The results of our review of the evidence submitted by Taxpayer are summarized in the table in the Appendix. Setting out at length the way in which we have reached these results would not benefit bench or bar.

## OTHER PAYROLL EXPENSES

■ ■ As already indicated, Taxpayer originally claimed $11,598 in payroll deductions. The Department and the Tax Court allowed him to deduct 75% of this figure, or $8,698.50. Our own de novo review of the record indicates that the appropriate total payroll deduction allowable to Taxpayer is $13,017.25. However, before we can permit this deduction we

must first resolve two issues: (1) may Taxpayer be allowed a greater deduction for an individual employee than he claimed via that employee's Forms 1099, and (2) may Taxpayer be allowed a greater total payroll deduction than he claimed on his original tax form?

■ We believe the answer to both question is yes. Taxpayer's tax return claimed a certain figure as his total deduction for payroll expenses. At the time of filing, Taxpayer was under no obligation to specify exactly how much of the deduction was based upon payments to each employee. That obligation arose only after the Department chose to challenge the accuracy of Taxpayer's return. When an issue is litigated before us on de novo review, we are bound to reach the correct result without regard for either party's prelitigation position. *See United Telephone Co. v. Dept. of Rev.*, 307 Or 428, 770 P2d 43 (1989) (Taxpayer's appeal for the 1983 tax year permitted this court to raise the valuation of taxpayer's property and, thus, increase the tax burden for that year. The Department's cross-appeal for the 1984 tax year permitted this court to lower the valuation of taxpayer's property for that year and reduce its tax liability accordingly).

## CONCLUSION

Taxpayer has established by a preponderance of the evidence that he is entitled to a payroll deduction of $13,017.25. The judgment of the Tax Court is modified and the case remanded for recalculation of Taxpayer's tax liability consistent with this opinion.

## APPENDIX

| EMPLOYEE NAME | 1099 TOTAL | CHECK TOTAL | AMOUNT ALLOWED |
|---|---|---|---|
| Bodey, A. | 63.76 | 31.88 | 31.88 |
| Brokell, D. | 0.00 | 39.60 | 39.60 |
| Bundy, M. | 0.00 | 20.00 | 20.00 |
| Buschell, D. | 0.00 | 15.00 | 15.00 |
| Clairidge, E. | 174.60 | 87.10 | 87.10 |
| Clairidge, L. | 1283.25 | 789.43 | 789.43 |
| Conklin, M. | 21.30 | 10.65 | 10.65 |
| Davis, A. | 75.60 | 36.00 | 36.00 |
| Davis, M. | 0.00 | 24.00 | 24.00 |
| Estes, C. | 2450.51 | 1844.12 | 1762.86 |
| Harris, __ | 12.02 | 0.00 | 0.00 |
| Jackson, B. | 96.22 | 28.38 | 28.38 |
| Johns, J. | 235.75 | 262.75 | 180.00 |
| Kirchem, S. | 27.63 | 27.63 | 27.63 |
| Krauss, R. | 124.00 | 124.00 | 124.00 |
| Laiflesh, C. | 17.00 | 0.00 | 0.00 |
| Licerich, D. | 134.13 | 134.13 | 134.13 |
| Lokting, B. | 1008.39 | 822.76 | 822.76 |
| McKee, C. | 33.35 | 33.35 | 33.35 |
| Meyer, B. | 585.25 | 631.13 | 626.13 |
| Oliver, A. | 178.00 | 590.21 | 531.73 |
| Olney, L. | 103.75 | 68.75 | 68.75 |
| Reed, A. | 986.14 | 3273.40 | 2959.40 |
| Reed, L. | 2218.25 | 3100.68 | 3159.31 |
| Reed, S. | 0.00 | 460.63 | 0.00 |
| Scott, S. | 245.75 | 200.75 | 200.75 |
| Setoze, A.[10] | 32.00 | 64.00 | 32.00 |
| Smith, D. | 376.88 | 376.88 | 376.88 |
| Sparks, D. | 257.00 | 142.00 | 142.00 |
| Wallingford, C. | 818.43 | 700.75 | 700.75 |
| Williams, J. | 0.00 | 13.40 | 13.40 |
| Williams, P. | 39.38 | 39.38 | 39.38 |
| TOTAL | 11598.34 | 13992.74 | 13017.25 |

[10] Apparently also known as "Ann Santiago" or "Ann Lo Santiago."

**PETERSON, C. J.,** concurring.

I concur in the court's decision and in its analysis of the merits of Taxpayer's claims. I write to express my concern about the paradoxical situation that can confront a trial court, who, as factfinder, having ruled piecemeal on admissibility as facially relevant evidence is presented, is left to review an undifferentiated mass of evidence in the record.

Here, for example, Taxpayer claimed that checks totalling $13,992.74 represented his payroll expense deduction. 310 Or at 263, n 4. That could be clear enough, but the important supporting documentation, in the form of Form 1099s, time sheets and ledgers, was not marshalled by Taxpayer in any coherent form for the Tax Court (or this court, for that matter) to review.

I agree with the opinion of this court that once having admitted the evidence, the Tax Court was constrained to consider it. But I would pause to underscore the notion suggested by footnote 9 of the opinion that the Tax Court could have required Taxpayer to put the evidence into some minimally coherent form before it was admitted.

In order to rule on admissibility of relevant evidence under OEC 403, the court must be able to determine if the evidence may result in "confusion of the issues," or in "undue delay" either in the presentation or the refutation, or in presentation of needlessly cumulative evidence. Moreover, in order to assign error to a ruling excluding evidence, ordinarily a party must make an offer of proof making known "the substance of the evidence" excluded. OEC 103(1)(b); *State v. Affeld,* 307 Or 125, 128, 764 P2d 220 (1988). At the appellate level, in addition to the offer of proof requirement in cases challenging the exclusion of evidence, the court requires a brief to include:

> A concise summary, without argument, of all the facts of the case material to determination of the appeal. The summary shall be in narrative form with references to the places in the transcript, narrative statement, audio record, record or abstract where such facts appear. (ORAP 5.40(8).)

*De novo* review is not Latin for "let the court figure it out." The standard of review does not absolve the parties from presenting their case in a comprehensible form. Faced with a

situation such as this case, the trial courts should not hesitate to require a party to present facially relevant evidence in a form that will prevent confusion, delay, or the introduction of needlessly cumulative evidence for the court to review. Appellate courts, for their part, should not hesitate to require stricter compliance with ORAP 5.40(8) when the situation demands it.