DECISION
Plaintiff appeals the land real market value of property identified as Account R327235 (subject property) for the tax year 2010-11. A trial was held in the Oregon Tax Court Mediation Center, Salem, Oregon, on September 12, 2011. Plaintiff appeared and testified on his own behalf. David Babcock (Babcock), Appraiser, appeared and testified on behalf of the Defendant. Jeff Sanders (Sanders), Residential Appraiser, Department of Assessment and Taxation, Multnomah County, testified on behalf of Defendant.
Plaintiff's Exhibits 1-12 and a two-page letter dated August 28, 2011, and Defendant's Exhibit A1-A8 were received without objection.
 I. STATEMENT OF FACTS
Plaintiff testified that the subject property is a 3.88 acre parcel of land located in Multnomah County outside the City of Portland limits. Plaintiff described the subject property as approximately 3.0 acres of "vacant" land, with the remainder developed as his residence. (Ptf's ltr at 1, Aug 28, 2011.) Plaintiff testified that in 2002, the City of Portland put "environmental restrictions" upon the "vacant" portion of his land, placing the eastern margin, approximately 1 acre, in an Environmental Protection Zone (P Zone) and designating the rest, approximately 1.8 acres, as an Environmental Conservation Zone (C Zone). (See id.) Plaintiff *Page 2 
submitted a document stating that a P Zone designation provides the highest level of protection and land development is rarely approved while in a C Zone designation, environmentally sensitive land developments may be permitted. (Ptf's Ex 1 at 4.) Plaintiff testified that the "three acres" have been "vacant his entire life."
Sanders testified that he discussed with a city planner the possibility of developing a flag lot somewhere within the subject property's undeveloped 3.0 acres. Sanders testified that the planner had told him that at least one additional lot could be developed outside of the environmental overlays with an access road coming from Southwest Hewett Boulevard. Plaintiff testified that he did not think partitioning the lot would be feasible because it would degrade the value of his property. Plaintiff further testified that he was told by City of Portland planners that due to these environmental overlays, he would be unable to "develop, sell, or disturb the soil" within the 3.0 acres. Plaintiff testified that he has not made formal application to go through the plating or subdivision process in connection with the environmental overlays. He concluded, stating that if such a flag lot development were attempted, his neighbors would take action to prevent it. Plaintiff testified that his "evidence is closer to being factual evidence or reality" because it is not based "on a hypothetical flag lot."
Plaintiff requested that the court reduce the 2010-11 real market value of his land from $411,800 to $306,800. Plaintiff testified that he determined the land real market value by comparing the 2010-11 subject property's real market value for his 3.0 acres of undeveloped land to the "real market value" on the tax roll of two nearby "vacant" parcels. (Ptf's ltr at 2, Aug 28, 2011; Ptf's Ex 1 at 9-11.) Plaintiff alleged that the differences in the county's "assigned market values" are "quite significant" and that the "[c]ounty should be more consistent in *Page 3 
assigning realistic [real market values] to comparable vacant lands within the same neighborhood." (Ptf's ltr at 2, Aug 28, 2011.)
Sanders, a registered Oregon appraiser for five years and a Washington state fee appraiser for six years, testified that he considered all three approaches to real property valuation (cost, income and market) but concluded that the comparable sales approach was the only reliable method for appraising Plaintiff's property. (Def's Ex A at 3.) Sanders testified that he inspected the subject property and selected three properties for the comparable sales approach, based on their proximity, site size, sale date, and similarity in environmental zoning overlays to the subject property. He testified that all three comparable sales were "listed and marketed as single or one-to-two home site properties." (Seeid. at 4.) To each of the comparable properties, Sanders' stated in part:
 "Due to subject being an improved site, adjustments were applied to the comparable sales that address differences in slope, view and onsite improvements. These adjustments have been derived from studies that support the market value of these various attributes.
(Id. at 3.) However, Sanders provided no additional specific information about each adjustment.
Sanders stated that "[b]ecause of the region-wide small number of large parcel of vacant land sales for the appealed tax year, the residual land approach to land valuation was chosen over a straightforward vacant land sales comparable approach." (Id.) Sanders testified that the residual land approach involves "subtracting the depreciated replacement costs of the improvement from the sale price of an improved property [leaving] the remainder [as] an indication of land value for that property." He stated that "[e]qual weight was given to the Comparable sales based upon their close proximity and comparable topography to the Subject." (Id.) Sanders concluded that the subject property's "indicated market land value" was $430,000, supporting the 2010-11 land real market tax roll value of $411,800. (Id. at 4, 6.) *Page 4 
In response, Plaintiff listed criteria that he believed was appropriate for the comparable sales approach, stating that the land should be vacant, undeveloped, inaccessible, environmentally challenged, and as similar as possible in location and nature to the subject property. Plaintiff testified that he felt this set of criteria was not met in the three properties Sanders used in his comparable sales approach to determine the subject property's real market value. He concluded that Sanders' appraisal technique "clearly has weaknesses." Plaintiff testified that the subject property is "an a-typical property."
Sanders testified that he identified six "Competing Area Market Sales — Land." (Id. at 7.) Using those six sales, Sanders computed a "Mean Sale Price per Acre," "Mean Sale Price per Lot" and mean dollar per square foot. (Id. at 7.) Sanders concluded that the estimated "Market Value by Unit of Comparison" was $489,556. (Id.) Sanders testified that the estimated unit value compares favorably with the indicated subject property's land real market value determined by the residual land approach.
Sanders testified that he determined the subject property's real market value "as is," one 3.88 acre parcel with a developed home site. He testified that even though it "might be feasible to develop another lot" he did not value the property as though it was partitioned or could be partitioned.
Plaintiff concluded his testimony by stating that "there could be a win/win situation," if "the county would use its authority as gatekeeper to roll back the environmental restrictions."
 II. ANALYSIS
The issue before the court is the 2010-11 real market value of approximately 3.0 acres of undeveloped land. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." Richardson v. Clackamas CountyAssessor, TC-MD *Page 5 
No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citingGangle v. Dept. of Rev., 13 OTR 343, 345 (1995)). Under ORS 308.205(1), [1] real market value is defined as: "* * * the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."
A. Approaches of Valuation — Real Market Value
The three different methods used to determine real market value are 1) the cost approach, 2) income approach, and 3) sales comparison or market approach. Allen v. Dept. of Rev.,17 OTR 248, 252 (2003). When determining the real market value of a property, the three different approaches to valuation must all be considered, even if one of the approaches is found to be unreliable.See ORS 308.205(2) and OAR 150-308.205-(A)(2).[2] Plaintiff did not present evidence using any of the three approaches.
Sanders used a variation of the comparable sales approach, the residual land approach, after concluding that is was the only appraisal method which was reliable for the subject property. A comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant."Chambers Management Corp v. Lane County Assessor, TC-MD No 060354D at 6 (Apr 3, 2007), citing Appraisal Institute, TheAppraisal of Real Estate 335 (12th ed 2001). ORS 308.205(2) provides in pertinent part that "[r]eal market value in all cases shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." The Department of Revenue adopted OAR 150-308.205-(A)(2)(c), which states in part:
 "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions *Page 6 
utilized in the sales comparison approach must be verified to ensure they reflect arms length market transactions."
Sanders selected three properties for his comparable sales approach, based on similarities to the subject property. Based solely on the characteristics of the comparable properties with adjustments, Sanders concluded a land real market value of $430,000 for the 2010-11 tax year, supporting the $411,800 land real market value on the tax roll. Sanders used land sales in the area to determine a land real market value and measured the reliability of the land real market value determined by the residual approach to that computed value. That value was in excess of the land real market value on the 2010-11 tax roll.
B. Burden of Proof
As the party seeking affirmative relief, Plaintiff bears the burden of proving that the subject property's land real market value is incorrect on the tax roll. ORS 305.427. Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." Schaefer v. Dept. ofRev., TC No 4530 at 4 (July 12, 2001) (citingFeves v. Dept. of Rev., 4 OTR 302 (1971)).
Plaintiff must present the greater weight of evidence to support his requested real market value reduction. This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." Poddar v. Dept. of Rev.,18 OTR 324, 332 (2005) (quoting Woods v. Dept. of Rev.,16 OTR 56, 59 (2002) (citation omitted). Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers.
Plaintiff failed to use any of the three common approaches prescribed by statute to determine the real market value the subject property. Plaintiff did not provide the court with any *Page 7 
evidence from a real estate expert or reliable market evidence to support the requested reduction in real market value. Plaintiff did submit evidence of the real market value on the tax roll for two neighboring "vacant" parcels of land, which he argued are more similar to the subject property than the three properties Sanders used in his comparable sales approach. Real market values on the tax roll do not provide the court with adequate information to determine the comparability of other properties to the subject property.
Plaintiff did provide the court with evidence that the P and C zone environmental overlays placed on the subject property restrict development of the subject property's undeveloped 3.0 acres. However, the impact, if any, of those restrictions on the subject property's land real market value was not quantified using one of the three valuation approaches.
Plaintiff's evidence in support of his requested real market value reduction is inconclusive. When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." Reed v. Dept. of Rev.,310 Or 260, 265, 798 P2d 235 (1990). Plaintiff has failed to carry his burden of proof.
Even though the burden has not shifted under ORS 305.427, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Defendant supplied the court with a residual land approach and land sales that support the subject property's land real market value as determined by Defendant. *Page 8 
 III. CONCLUSION
After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to carry his burden of proof. Based on the evidence presented, the subject property's real market value on the 2010-11 real market tax roll is sustained. Now therefore,
IT IS THE DECISION OF THIS COURT that that Plaintiff's appeal for the tax year 2010-11 is denied.
Dated this ___ day of November 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor,1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on November 15, 2011. The Court filed and entered thisdocument on November 15, 2011.
[1] All references to the Oregon Revised Statutes (ORS) are to 2009.
[2] All references to the Oregon Administrative Rules (OAR) are to the rules in effect in 2009.