DECISION
Plaintiff appeals from Defendant's assessments of withholding tax and Lane transit tax for the periods ending June 30, 2009, September 30, 2009, and December 31, 2009 (the subject periods). Trial was held in the Tax Courtroom, Salem, Oregon, on July 13, 2011. James C. Jagger, Attorney at Law, appeared on behalf of Plaintiff. Deanna Mack, Senior Policy Analyst, appeared on behalf of Defendant. Roger William Bidwell (Bidwell), sole proprietor of Plaintiff, testified as a witness for Plaintiff and was also called as a witness by Defendant. Plaintiffs Exhibits 101 through 115 and Plaintiffs Supplemental Exhibits 116 through 120 were received without objection. Defendant's Exhibits A2 through A12, B1, B2, and C1 through C4 were received without objection. At trial, Plaintiff verbally requested that this appeal be consolidated with Plaintiffs 2010 tax year appeal involving the same issue. The court denied Plaintiffs request to consolidate because, as of the trial date in this matter, Plaintiff had not yet filed an appeal for the 2010 tax year; there is no appeal to be consolidated prior to filing the appeal.
 I. STATEMENT OF FACTS
During trial, Bidwell testified that he is the sole proprietor of Plaintiff, a construction company that builds custom wood fences and decks in Lane and Benton counties. He testified that, in 2008, he entered into an agreement with Derek Down (Down), whereby Down would *Page 2 
perform work for Plaintiff. (Ptf's Ex 104.) Bidwell testified that Down performed work for Plaintiff during the subject periods. Bidwell testified that Down is a friend he met in the construction business. He testified that he believes that Down works for others, but does not know specifically for whom. Bidwell testified he does not believe Down has a business card.
Bidwell testified that his contract with Down is meant to cover all future jobs, noting the reference to "TBA" in lieu of a statement of the work to be performed by Down. (Ptf's Ex 104 at 2.) Bidwell testified that specific job prices are negotiated and agreed upon verbally. Bidwell testified that he has no documents evidencing past verbal agreements with Down other than the 1099 forms filed by Down. Bidwell testified that his conversations with Down concerning jobs typically cover the price, the specific job details, and the job timeline (i.e. to be "finished in a month"). Bidwell testified that Down sometimes negotiates with him concerning a job, always for more money. Bidwell testified that he thought Down had been successful in negotiating a better price for a job, but he did not seem confident in his testimony. He later estimated that the contract price ultimately agreed upon is a negotiated compromise about 70 percent of the time. Bidwell testified that Down is paid in cash and by check.
Bidwell testified that, when he has a job, he calls up someone such as Down and offers the job for a fixed price. Bidwell testified that Down is one of a select few that he might call for a job. He testified that Down "likes to fish more than work" so Down might turn down a job because he is fishing. He testified that his payment to Down for labor has always been a fixed amount, but sometimes Down provides lumber or other materials and Bidwell reimburses him for those expenses. Bidwell testified that Down provides his own set of tools.
Bidwell testified that Down has the authority to hire or fire other individuals, although he cannot confirm whether Down has done so. Bidwell testified that he does not instruct Down to *Page 3 
show up at a job site on a particular day or time, nor does he "spy" on Down during his work at a job site. Bidwell testified that he has stopped by a job site before and has seen others, perhaps Down's "fishing buddies," working for Down. Bidwell testified that when Down is finished with the work, he calls Bidwell to let him know.
Bidwell testified that the contract requires Down to correct defective work at his own cost. (Ptf's Ex 104 at 2.) He testified that Down bears the risk of loss if a project costs more than the contract price. Bidwell testified that there were instances in 2009 when Down had to correct his work. He testified concerning "change orders," contrasting them with instances in which Down is required to correct work. "Change orders" occur between Bidwell and his clients and might involve different work or the use of different materials. Bidwell testified that, if a "change order" results in more work on a particular job, he "re-opens" negotiations with Down concerning that job.
Bidwell testified that Down has work agreements only with Plaintiff and not with any of Plaintiff's clients; Down has no authority with Plaintiff's clients. (See Def's Ex A11.) Bidwell testified that he negotiates work agreements with clients and often sketches the work to be completed. (See, e.g., Id. at 3.) He testified that he might share a contract, usually the sketch, with Down to help define the job specifications. Bidwell testified that Down's work might deviate a bit from the sketch in terms of a few measurements. He testified that he does not direct Down with respect to the order that work is completed.
Bidwell testified that he is licensed as an "exempt" independent contractor with the Construction Contractors Board (CCB). (Def's Ex A3 at 1.) He testified that "exempt" independent contractors are barred from hiring any employees. ORS 701.035(3). Bidwell testified that Down was an independent contractor under ORS 670.600 during the subject *Page 4 
periods. He testified that Down is not required to be licensed because he falls within a licensure exemption under ORS 701.010(4) for projects that are less than $500. Bidwell testified that he considered the requirements of ORS 670.600 and ORS 701.010(4) in drafting Plaintiffs contract with Down.
Bidwell submitted an affidavit from Down stating that the "aggregate price for [Down's] contribution to [each] structure or project, including labor, materials, has at all times been less than $500.00." (Ptf s Ex 106.) The affidavit also states that Down's work had been "casual, minor, or of an inconsequential nature" and that Down did not "advertise[] or put out any sign, card, or other device that might indicate to the public that [Down] was a contractor." (Id.) Bidwell testified that Down's affidavit was consistent with Bidwell's understanding of Down's work. Down did not appear or testify at trial.
Bidwell testified concerning an incident with the Construction Contractors Board (CCB). He testified that, on May 27, 2008, the CCB conducted a job site inspection and the field representative asked Bidwell's client for a copy of the contract. (See Def s Ex A4.) He testified that the client provided only one side of the contract to the investigator, so the independent contractor requirements were not entered as exhibits. Bidwell testified that Plaintiff entered into a settlement agreement following the 2008 investigation because it was a stressful time and he wanted a quick resolution. Bidwell also testified concerning another CCB site inspection that occurred on March 4, 2011. (Def s Ex C4 at 7-9.)
 II. ANALYSIS
ORS 316.167 imposes an obligation upon every employer to withhold income taxes from wages and salary paid to employees.[1]
ORS 316.162 provides the pertinent definitions of "wages": *Page 5 
 "(2) `Wages' means remuneration for services performed by an employee for an employer, including the cash value of all remuneration paid in any medium other than cash, exception that `wages' does not include remuneration paid:
 "* * * * *
 "(j) for services provided by an independent contract, as defined in ORS 670.600."
Plaintiff argues that Down was an "independent contractor" under ORS 670.000 and, therefore, Down did not receive "wages" from Plaintiff. ORS 670.600(2) states in pertinent part:
 "(2) As used in ORS chapters 316, 656, 657, 671 and 701, `independent contractor' means a person who provides services for remuneration and who, in the provision of the services:
 "(a) Is free from direction and control over the means and manner of providing the services, subject only to the right of the person for whom the services are provided to specify the desired results;
 "(b) Except as provided in subsection (4) of this section, is customarily engaged in an independently established business;
 "(c) Is licensed under ORS chapter 671 or 701 if the person provides services for which a license is required under ORS chapter 671 or 701; and
 "(d) Is responsible for obtaining other licenses or certificates necessary to provide the services.
The language "and" at the end of ORS 670.600(2)(c) indicates that all four subsections are mandatory, not alternative, requirements.Preble v. Dept. of Rev., 331 Or 320, 324-25, 14 P3d 613 (2000) (use of the word "and" to connect three statutory requirements "indicates that they are not alternatives."). Plaintiff must satisfy each of the four requirements in ORS 670.600(2) to qualify as an independent contractor.
Defendant has promulgated rules concerning ORS 316.162 and ORS 670.600. OAR 150-316.162(2)(j)(1) states, "[a]s used in the various provisions of ORS Chapters 316, 656, 657, 671 and 701, an individual or business entity that performs labor or services for remuneration shall be considered to perform the labor or services as an `independent contractor' *Page 6 
if the standards of ORS 670.600 are met. See OAR 150-670.600 for definitions related to independent contractors." Defendant's rule pursuant to ORS 670.600 states, in pertinent part:
 "(1) Purpose of Rule. The Landscape Contractors Board, Department of Revenue, Department of Consumer and Business Services, Employment Department, and Construction Contractors Board must adopt rules together to carry out ORS 670.600. ORS 670.600 defines `independent contractor' for purposes of the programs administered by these agencies. This rule is intended to ensure that all five agencies apply and interpret ORS 670.600 in a consistent manner; to clarify the meaning of terms used in ORS 670.600; and, to the extent possible, to enable interested persons to understand how all five agencies will apply ORS 670.600.
 "(2) Statutory Context.
 "(a) ORS 670.600 generally establishes three requirements for `independent contractors.' One requirement is that an `independent contractor' must be engaged in an `independently established business.' Another requirement is related to licenses and certificates that are required for an `independent contractor' to provide services. A third requirement is that an `independent contractor' must be `free from direction and control over the means and manner' of providing services to others.
 "(b) The specific focus of this rule is the `direction and control' requirement. See ORS 670.600 for the requirements of the `independently established business' test and for licensing and certification requirements."
OAR 150-670.600(1)-(2). That rule also provides specific definitions of "means," "manner," and "free from direction and control," as used in ORS 670.600. OAR 150-670.600(3)(a)(A)-(C).
The issue before the court is whether Down was an independent contractor under ORS 670.600 during the subject periods. Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence."Feves v. Dept. of Rev., 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet [its] burden of proof." Reed v. Dept. of Rev.,310 Or 260, 265, 798 P2d 235 (1990). *Page 7 
A. Independently established business
To be an "independent contractor," Down must have been "customarily engaged in an independently established business" during the subject periods. ORS 670.600(2)(b); OAR 150-670.600(2). Subsection 3 of ORS 670.600 provides specific requirements:
 "(3) For purposes of (2)(b) of this section, a person is considered to be customarily engaged in an independently established business if any three of the following requirements are met:
 "(a) The person maintains a business location:
 "(A) That is separate from the business or work location of the person for whom the services are provided; or
 "(B) That is in a portion of the person's residence and that portion is used primarily for the business.
 "(b) The person bears the risk of loss related to the business or the provision of services as shown by factors such as:
 "(A) The person enters into fixed-price contracts;
 "(B) The person is required to correct defective work;
 "(C) The person warrants the services provided; or
 "(D) The person negotiates indemnification agreements or purchases liability insurance, performance bonds or errors and omissions insurance.
 "(c) The person provides contracted services for two or more different persons within a 12-month period, or the person routinely engages in business advertising, solicitation or other marketing efforts reasonably calculated to obtain new contracts to provide similar services.
 "(d) The person makes a significant investment in the business, through means such as:
 "(A) Purchasing tools or equipment necessary to provide the services;
 "(B) Paying for the premises or facilities where the services are provided; or *Page 8 
 "(C) Paying for licenses, certificates or specialized training required to provide the services;
 "(e) The person has the authority to hire other persons to provide or to assist in providing the services and has the authority to fire those persons."
Down was the person in the best position to testify concerning whether he is engaged in an "independently established business." Unfortunately, he did not testify at trial. The only evidence provided was Bidwell's testimony and the documents submitted by Plaintiff, including the contract between Plaintiff and Down and the affidavit of Down. It is not clear from the evidence whether Down maintains a "business location" within the meaning of ORS 670.600(3)(a). There is no testimony or evidence to suggest that Down maintains a business location separate from Plaintiff's business location or that Down maintains a business location in a portion of his residence.
Bidwell testified that he believed Down worked for others in 2009; however, Bidwell could not identify other entities or individuals for whom Down worked in 2009. Bidwell testified that he does not believe that Down has a business card. Based on Down's affidavit, he is restricted with respect to his ability to advertise. It is not clear how one would contact Down to retain his services. Ultimately, the court is not persuaded that Down "provide[d] contracted services for two or more different persons within a 12-month period, or [that he] routinely engage[d] in business advertising, solicitation or other marketing efforts reasonably calculated to obtain new contracts to provide similar services." ORS 670.600(3)(c).
Bidwell testified that Down provides his own tools. However, that is only one of several indicia that a person "makes a significant investment in the business[.]" ORS 670.600(3)(d). There is no evidence that Down pays for "the premises or facilities where the services are *Page 9 
provided" or "licenses, certificates or specialized training required to provide the services." ORS 670.600(3)(d)(B)-(C).
Bidwell testified that Down has the authority to hire and fire other individuals with respect to the services provided. ORS 670.600(3)(e). However, Bidwell could not identify individuals Down has hired. Bidwell recalled seeing others at job sites and speculated that they were Down's "fishing buddies" helping out with the job. Bidwell's speculation is not sufficient to establish by a preponderance of the evidence that Down has the authority to "hire other persons to provide or to assist in providing the services and has the authority to fire those persons[]" as required by ORS 670.600(3)(e).
Bidwell testified that his contracts with Down are for a fixed price and that Down is required to correct defective work. ORS 670.600(3)(b)(A)-(B). Bidwell testified that there were instances in 2009 when Down was required to correct his work. The court is satisfied that Down "[bore] the risk of loss related to * * * the provision of services." Id. However, that is only one requirement out of five stated in ORS 670.600(3). In order to establish that an individual had an "independently established business," at least three of the five requirements stated in ORS 670.600(3) must be met. The evidence supporting a finding that Down had an
"independently established business" during the subject periods is scant. Bidwell's testimony on that issue consisted primarily of speculation and Down, who possesses personal knowledge, was not available to testify at trial. That evidence is "inconclusive and unpersuasive" and does not meet the burden of proof. Reed,310 Or at 265. Plaintiff failed to establish that Down met any of the remaining four requirements under ORS 670.600(3) during the subject periods. Plaintiff has not established that Down had an "independently established business" under ORS 670.600(2)(b), (3). *Page 10 
B. Independent contractor conclusion
Having found that Plaintiff failed to establish by a preponderance of the evidence that Down had an "independently established business" under ORS 670.600(2)(b), (3), it follows that Plaintiff has failed to satisfy one of the four requirements for an "independent contractor" under ORS 670.600(2). Given that each of the four requirements under ORS 670.600(2) are mandatory, the court need not address the remaining three requirements, including whether Down was "free from direction and control over the manner and means of providing the services" and whether Down "provide[d] services for which a license is required under ORS chapter 671 or 701." Id. The court finds that Plaintiff has failed to prove by a preponderance of the evidence that Down was an "independent contractor" within the meaning of ORS 670.600(2) during the subject periods.
 III. CONCLUSION
Plaintiff has not established by a preponderance of the evidence that Down was an "independent contractor" within the meaning of ORS 670.600(2). Therefore, Plaintiff has failed to establish that its payments to Down during the subject period were not "wages" as defined in ORS 316.162 and Plaintiff's appeal must be denied. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.
Dated this ___ day of November 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor,1241 State Street, Salem, OR. Your Complaint must be submitted within60 days after the date of the Decision or this Decision becomes finaland cannot be changed.
 This document was signed by Magistrate Pro Tempore Allison R.Boomer on November 30, 2011. The Court filed and entered this documenton November 30, 2011.
[1] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2007. *Page 1