IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

PAUL E. MAYER and DIANE B. MAYER,  )
                                    )
            Plaintiffs,             )    TC-MD 110274N
                                    )
      v.                            )
                                    )
MULTNOMAH COUNTY ASSESSOR,          )
                                    )
            Defendant.              )    **DECISION**

Plaintiffs appeal the real market value and exception real market value of property

identified as Account R152740 (subject property) for the 2010-11 tax year. A trial was held in

the Tax Courtroom, Salem, Oregon on January 5, 2012.[1] Paul E. Mayer (Paul) and Diane B.

Mayer (Diane) testified on behalf of Plaintiffs.[2] Scarlet Weigel appeared on behalf of Defendant.

Stephanie McQuown (McQuown), Registered Appraiser, testified on behalf of Defendant.

Plaintiffs' Exhibit 1 and Defendant's Exhibit A were offered and received without objection.

## I. STATEMENT OF FACTS

The subject property is an "English style home on a 14,150 [square foot] lot," that

includes 3,033 square feet of gross living area, 718 square feet of finished basement, 264 square

feet of unfinished basement, as well as a two-car garage (Def's Ex A at 2.) The subject property

is located in the Eastmoreland neighborhood, described by McQuown as "comprised of single

family residences" and "surrounded by well defined features such as Reed College, the

Rhododendron Gardens, Eastmoreland Golf Course, and Johnson Creek." (*Id.* at 1.) Plaintiffs

purchased the subject property on June 4, 2007, for $1,050,000. (Ptfs' Ex 1 at 1.)

---

[1] Defendant appeared by telephone.

[2] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's Decision recites facts and references to two individuals with the same last name, Mayer. To avoid confusion, the court will use the first name of the individual being referenced.

A.      *Remodel and exception value*

Plaintiffs spent "approximately $170,000" on a "kitchen remodel" (remodel). (*Id.*) Paul testified that the remodel involved converting the "galley kitchen" to a family kitchen, including moving one wall of the kitchen by about three feet, which increased the size of the kitchen. Plaintiffs characterize "a considerable portion" of the remodel as "correct[ing] prior shoddy workmanship and renovation not done according to code (electrical service; plumbing service; framing work; foundation work; etc.)." (Ptfs' Ex 1 at 1, 4.) Paul testified that the subject property had been remodeled several times prior to Plaintiffs' purchase, but permits had not been issued and the work was not up to code. He testified that, prior to the remodel, the kitchen had no insulation, lacked sufficient pantry space, and included an improperly installed vent and plumbing that was not up to code; additionally, Plaintiffs added new cabinets, appliances, and granite countertops. Paul testified that Plaintiffs also corrected a problem with the concrete floor in the garage. Diane testified that Plaintiffs moved a "mud room" wall about three feet, changing the kitchen shape from oblong to square.

Paul testified that the contractor who completed the remodel is a family friend. He testified that Plaintiffs also hired an architect and kitchen planner to assist with the remodel. Paul testified that Plaintiffs are not able to distinguish the cost attributable to repairs from the cost attributable to new improvements.

McQuown reported that "[t]he original permit [for the remodel] was issued 10/08/2008 and a final permit was approved by the City of Portland on 06/16/2009." (Def's Ex A at 2.) She testified that she conducted a site inspection of the subject property on May 17, 2011. *Accord id.* McQuown describes the remodel as adding "61 square feet at the front of the home[], removing a wall between the kitchen and dining room, creati[ng] a pantry, a large island and new high

quality cabinetry, countertops, flooring, sink, faucet, lighting, and all appliances." (*Id.*)

McQuown testified that Defendant completed a "Kitchen Remodel Flat Value Study" in 2009; "[i]t was developed through an analysis of cost of materials, return on investment, sales comparisons, and trade publications to determine the contributory value of a kitchen remodel to the overall value of an improvement." (Def's Ex A at 2.) She testified that the subject property remodel was a "Major Kitchen Remodel" because it included new cabinets, a new island, movement of walls, and new cabinets and countertops. (*Accord id.*) Defendant's study states an adjustment of $70,000 for a "Class 5.0" "Major" kitchen remodel. (*Id.* at 13.) McQuown testified that she also considered the 2009-10 "Remodeling Cost vs. Value Report" indicating that "an upscale major kitchen remodel has a 70% cost recouped amount." (*Id.* at 2, 12.) "The exception RMV added to the subject [property] for 2010 is merely 45% of the cost[.]" (*Id.* at 2.) McQuown determined that "the Exception RMV indicated by the Kitchen Remodel Flat Value Study is $70,000[,] which is also supported by the Cost vs. Value Report." (*Id.* at 3.) Defendant determined a 2010-11 exception value of $76,450 for the subject property. At trial, Defendant clarified that $70,000 represented the value of the remodel and the additional $6,450 represents the value of the additional square feet added.

B.      *Real market value*

Paul testified that he is the chief credit officer for a bank in Portland and, in that capacity, reviews both residential and commercial appraisals. Paul testified that Plaintiffs purchased the subject property at the peak of the market in 2007. Citing the "Case-Shiller Home Price Index", Paul testified that Portland home prices have dropped dramatically since 2007. Paul's testimony is supported by an OregonLive.com blog entry dated February 23, 2011, stating that the "Case-Shiller home price index published monthly by Standard & Poor's was released today for

December 2010" and the index "represents a decline in home prices of approximately 26% from" the peak in July 2007. (Ptfs' Ex 1 at 22.) In support of their requested real market value of $915,000, Plaintiffs present a hypothetical calculation: If the entire cost of the remodel ($170,000) were added to the purchase price of $1,050,000, the resulting total real market value would be $1,220,000; if a 25 percent market decline ($305,000) were applied to that value, the resulting real market value would be $915,000. (Ptfs' Ex 1 at 4.)

Paul testified that Plaintiffs' realtor provided them with all sales of Eastmoreland properties in 2009 and that the highest sale price was $950,000. (*See* Ptfs' Ex 1 at 8-18 (33 sales with prices ranging from $265,000 to $950,000).) Plaintiffs identified two comparable sales of properties located on 28th Avenue that abut the subject property. (*Id.* at 4-5.) Plaintiffs' sale 1 occurred on December 3, 2010, for $880,000; sale 2 occurred on November 3, 2010, for $699,000. (*Id.* at 5.) Paul testified that he did not make adjustments, but that adjustments are implicit in his conclusion of a $915,000 value for the subject property. McQuown testified that Plaintiffs' comparable sales are both "Mediterranean style" and are located on a busier street than the subject property (28th Avenue), so she does not consider them comparable.

McQuown identified three comparable sales located 0.1, 0.3, and 0.4 miles from the subject property, respectively. (Def's Ex A at 4.) She testified that "[n]early every aspect of the subject property was bracketed by the comparables utilized in this report, such as: year built, bath count, gross living area (above grade square footage), unfinished basement area, etc." (*Id.* at 2.) Sale 1 occurred on September 10, 2010, for $1,125,000; sale 2 occurred on June 14, 2010, for $950,000; and sale 3 occurred on July 6, 2009, for $950,000. (*Id.* at 4.) McQuown determined adjusted sale prices of $1,139,100, $962,300, and $886,200, respectively. (*Id.*) She gave the least weight to sale 3 and concluded an indicated value of $950,000 for the subject

property. (*Id.* at 2-3.) McQuown testified that she has driven by all three of her comparable sales, but has not inspected the interior of any of them. Paul testified that Plaintiffs are friends with the owner of Defendant's sale 1; it is completely remodeled with a superior finish and he disagrees that it is comparable to the subject property.

## II. ANALYSIS

The issues before the court are the real market value and the exception value of the subject property for the 2010-11 tax year. The parties agree that a reduction in the 2010-11 real market value of the subject property is merited, but differ with respect to the magnitude of the reduction. Plaintiffs request a real market value of $915,000 and McQuown determined a real market value of $950,000. (Ptfs' Compl at 1; Def's Ex A at 3.) The 2010-11 roll real market value of the subject property is $1,035,080, and the 2010-11 maximum assessed value is $572,120. (Ptfs' Compl at 4.)

As stated in the court's Order of August 19, 2011, ORS 305.275(1)(a) requires that a taxpayer be "aggrieved" in order to appeal to this court; if a taxpayer is not "aggrieved" within the meaning of ORS 305.275, then that taxpayer does not have standing to appeal.[3] "In requiring that taxpayers be 'aggrieved' under ORS 305.275, the legislature intended that the taxpayer have an immediate claim of wrong." *Kaady v. Dept. of Rev.*, 15 OTR 124, 125 (2000). This court has consistently interpreted ORS 305.275(1) to require that a taxpayer's requested relief result in tax savings to the taxpayer. *See Parks Westsac L.L.C. v. Dept. of Rev.*, 15 OTR 50, 52 (1999). A reduction in the 2010-11 real market value of the subject property to $915,000, as requested by Plaintiffs, would not result in tax savings to Plaintiffs. (*See* Def's Mot to Dismiss.) However, a reduction in the 2010-11 exception value of the subject property would result in a reduction of

---

[3] All references to the Oregon Revised Statutes (ORS) and the Oregon Administrative Rules (OAR) are to 2009.

the 2010-11 maximum assessed value and assessed value of the subject property; thus, a reduction in the 2010-11 exception value of the subject property would result in tax savings to Plaintiffs. (*See* Order at 3, Aug 19, 2011.) The court's jurisdiction in this matter under ORS 305.275(1) is dependent upon a finding that the 2010-11 exception value of the subject property is in error. Thus, the court begins its analysis with exception value.

A.     *Exception value*

The value of new property and new improvements is commonly referred to as "exception value"; it "is a term used to identify certain changes to property for the current tax year that result in additions to both [real market value] and [maximum assessed value], and an *exception* to the typical constitutional and statutory cap of three percent on annual increases to [maximum assessed value]." *Banducci v. Douglas County Assessor*, TC-MD No 090069C, WL 3706451 at *1 n 4 (Sept. 23, 2010) (internal citations omitted).[4] (Emphasis in original). ORS 308.149(5) states, in part:

> "(a) 'New property or new improvements' means changes in the value of property as the result of:
>
> "(A) New construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property;
>
> "* * * * *.
>
> "(b) 'New property or new improvements' does not include changes in value as the result of:

/ / /

---

[4] In Oregon, real property is taxed on the lesser of the property's real market value or maximum assessed value. ORS 308.146(2); ORS 308.153(3). When a new improvement is added to property, the maximum assessed value is the sum of the maximum assessed value of the property as if it had not changed and the maximum assessed value of the new improvement. ORS 308.153(1). The maximum assessed value of the new improvement is the product of the amount by which the real market value of the new improvement exceeds the real market value of any retirements, and the ratio of the average maximum assessed value for similar property in the area to the average real market value for similar property in the area. ORS 308.153(1)(b),(2)(a); ORS 308.149 (defining terms used in ORS 308.153(1)(b)).

"(A) General ongoing maintenance and repair; or

"(B) Minor construction."[5]

"The value of new property or new improvements shall equal the real market value of the new property or new improvements reduced (but not below zero) by the real market value of retirements from the property tax account." ORS 308.153(2)(a). Exception value must "exclude factors such as changes in inflation, market demand, and construction codes." *Magno v. Dept. of Rev. (Magno)*, 19 OTR 51, 63 (2006), citing *Hoxie v. Dept. of Rev.*, 15 OTR 322, 326 (2001).

ORS 308.205(1) defines real market value as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(2) states, in part, that the real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue * * *." The three approaches of value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150–308.205–(A)(2)(a); *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003). Although all three approaches must be considered, all three approaches may not be applicable in a given case. OAR 150–308.205–(A)(2)(a).

---

[5] "General ongoing maintenance and repair" is defined as an activity that:

"(A) Preserves the condition of existing improvements without significantly changing design or materials and achieves an average useful life that is typical of the type and quality so the property continues to perform and function efficiently;

"(B) Does not create new structures, additions to existing real property improvements or replacement of real or personal property machinery and equipment;

"(C) Does not affect a sufficient portion of the improvements to qualify as new construction, reconstruction, major additions, remodeling, renovation or rehabilitation; and

"(D) For income producing properties is part of a regularly scheduled maintenance program."

OAR 150-308.149-(A)(2)(a). "Minor construction" is defined as "additions of real property improvements, the real market value of which does not exceed $10,000 in any assessment year or $25,000 for cumulative additions made over five assessment years." ORS 308.149(6).

Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). Plaintiffs "must establish by competent evidence what the appropriate value of the property was as of the assessment date in question." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiffs cite *Caruso v. Lane County Assessor*, TC-MD No 080368C (July 25, 2008), for the proposition that "Exception RMV is 'the amount by which [the] market value increased." (Ptfs' Ex 1 at 2-3.) More precisely, exception value includes the change in real market value *as a result of* "[n]ew construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property * * *." ORS 308.149(5)(a). Exception value does *not* include changes in real market value attributable to "changes in inflation, market demand, and construction codes." *Magno*, 19 OTR at 63. Plaintiffs' value evidence does not provide any mechanism by which the court can distinguish between changes in the market and changes attributable to Plaintiffs' remodel.

Also excluded from exception value are changes in value attributable to "[g]eneral ongoing maintenance and repair." ORS 308.149(5)(b)(A). Paul testified that some portion of the remodel included correction of "prior shoddy workmanship" and repairs. The court found Paul to be a credible witness and has no reason to doubt his testimony. Thus, some of Plaintiffs' remodel work may be "general ongoing maintenance and repair" rather than "new

improvements." Unfortunately, the court received no evidence by which it can make such a distinction, much less determine the portion of the remodel properly captured as exception value. Defendant's evidence, including the Kitchen Remodel Flat Value Study and the Cost vs. Value Report both support the exception value of $76,450. The court finds that the evidence presented does not support a reduction in the 2010-11 exception value determined by Defendant.

B.    *Real market value; aggrievement under ORS 305.275*

The evidence presented by both parties suggests that the 2010-11 roll real market value is excessive and the 2010-11real market value of the subject property is no more than $950,000. However, given the court's finding that no reduction in the 2010-11 exception value of the subject property is merited, Plaintiffs are not aggrieved under ORS 305.275 and the court cannot order a reduction in the 2010-11 real market value of the subject property.

## III.  CONCLUSION

After carefully considering the testimony and evidence, the court finds that the 2010-11 roll exception real market value of $76,450 is supported. The court further finds that the 2010-11 real market value of the subject property is no more than $950,000, but cannot order a change in the 2010-11 real market value of the subject property because Plaintiffs' are not aggrieved under ORS 305.275(1). Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal of the 2010-11 exception real market value of property identified as Account R152740 is denied.

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that Plaintiffs' appeal of the 2010-11 real market value of property identified as Account R152740 is dismissed because Plaintiffs' are not aggrieved within the meaning of ORS 305.275.

Dated this ____ day of March 2012.

_____
ALLISON R. BOOMER
MAGISTRATE PRO TEMPORE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Pro Tempore Allison R. Boomer on March 13, 2012. The Court filed and entered this document on March 13, 2012.*