IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| GREGORY E. STIPKALA, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 120302D |
| | ) | |
| v. | ) | |
| | ) | |
| MULTNOMAH COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appealed the Multnomah County Board of Property Tax Appeals Order, dated
March 19, 2012, determining that the 2011-12 real market value of property identified as
Account R133315 (subject property) was $995,000. A telephone trial was held on
January 28, 2013. Plaintiff appeared on his own behalf. Jeff Brown, Appeals Lead, Multnomah
County Oregon Division of Assessment, Recording & Taxation Section, appeared on behalf of
Defendant. Barry Dayton (Dayton), Appraiser III, Multnomah County Oregon Division of
Assessment, Recording & Taxation Section, testified on behalf of Defendant.

Defendant Exhibit A was admitted without objection.

## I. STATEMENT OF FACTS

Plaintiff testified that he would "accept $850,000" as the real market of the subject
property as of the assessment date January 1, 2011. He testified that using "PortlandMaps.com"
he determined that the improvement values for six neighboring properties[1] declined 16 to 18
percent and land values increased 7 percent for a "net 8 percent decrease" in total real market
value between tax years 2010-11 and 2011-12. Plaintiff testified that the subject property is

---

[1] Plaintiff listed the addresses of the six neighboring properties (1048 N.W. Eloise Lane; 1130 N.W. Eloise;
1231 N.W. Eloise; 1129 N.W. Eloise; 1145 N.W. Eloise and 1033 N.W. Eloise) and recited his calculation of
increases and decreases in improvements, land and total real market value for each property.

similar to each neighboring properties: "same neighborhood; similar square footage; similar topography." He testified that the subject property is the "only home in his neighborhood that has gone up" in real market value. Plaintiff testified that the subject property has "construction defects," noting 11 breaks in the shared water system and concluding that the replacement "of the 3 inch water line" would have to be "disclosed at sale." He testified that the subject property has "a hole in the ceiling" and water is leaking into the house because of a break in the "suspended driveway membrane."

Dayton testified that he was a "licensed certified appraiser" beginning in 1990-1991 and that license is currently "inactive" because he is registered appraiser working full-time for Defendant. He reviewed his appraisal report, stating that he concluded that the income approach was not applicable to the subject property. (Def's Ex A at 15.) Dayton testified that he determined a real market value of $1,056,000 (rounded) for the subject property using the cost approach. (*Id*. at 13–15, 19.) He testified using the comparable sales or market approach he determined a real market value of $1,090,000. (*Id*. at 9-13, 17-18.) Dayton testified that he determined a reconciled 2011-12 real market value of $1,070,000. (*Id*. at 16.)

In response to Plaintiff's questions, Dayton testified that he did not consider "the defects" identified by Plaintiff because he did not have evidence that the defects existed as of the assessment date and no substantiation was provided showing the cost to cure the defects identified by Plaintiff. Plaintiff disagreed with Dayton's description of the subject property, noting that the subject property is not connected to "public sewer," does not have two bedrooms on the lower level and is one of six, not "five lots in a small project with private street access * * *." (*See id*. at 7.) Plaintiff asked Dayton to explain how he concluded that the subject property's "crawlspace could be easily converted to living space." (*See id*. at 8.) Dayton

testified that it was his "opinion" and he was not aware that there was a "natural spring" in the crawlspace and that the "plumbing was above grade."

Plaintiff asked Dayton why four of his six comparable properties were "on flat lots" when the "subject property is on a severely sloped lot." He noted that three of Defendant's comparable properties are located in Washington County, and the subject property is located in Multnomah County. Dayton responded, stating the he "selected the best available comparables" and made "adjustments for relevant differences." He admitted that he did not adjust for topography. Plaintiff testified that Dayton's comparable properties are "not strong comparables" because the subject property's lot "is cut into the hillside" and many of the comparables are "flat lots" with "usable backyards."

## II. ANALYSIS

At issue in this case is the subject property's real market value for the 2011-12 tax year. ORS 308.205(1)[2] defines real market value as:

> "[T]he amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2011-12 tax year was January 1, 2011. ORS 308.007(2).

Real market value is determined by the particular methods and procedures adopted by the Department of Revenue. ORS 308.205(2). There are three approaches to valuation (income, cost, and sales comparison) that must be considered when determining the real market value of a property. *Allen v. Dept. of Rev.*, 17 OTR 248, 252 (2003); *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995); *see also* OAR 150-308.205-(A)(2)(a). The valuation approach to be used is a

///

---

[2] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 2009.

question of fact to be determined on the record. *Pacific Power and Light Co. v. Dept. of Rev.*, 286 Or 529, 533, 596 P2d 912 (1979).

A.      *Cost approach*

" 'In the cost approach, the value of a property is derived by adding the estimated value of the land to the current cost of constructing a reproduction or replacement for the improvements and then subtracting the amount of depreciation * * * in the structure from all causes.' " *Magno v. Dept. of Rev*. (*Magno*), 19 OTR 51, 55 (2006) (citations omitted). "The cost approach is 'particularly useful in valuing new or nearly new improvements.' " *Id*. In previous decisions, this court accepted the conclusion in the Appraisal Institute's *The Appraisal of Real Estate* (*Appraisal of Real Estate*) 382 (13th ed 2008), that "[t]he [cost] approach is especially persuasive when land value is well supported and the improvements are new or suffer only minor depreciation and, therefore, approximate the ideal improvement that is the highest and best use of the land as though vacant." *E.g. 1410 Orchard Street LLC v. Lane County Assessor*, TC-MD No 120108 at 7 (Dec 24, 2012); *e.g. Wittemyer v. Multnomah County Assessor*, TC-MD No 110493C at 7 (Jul 24, 2012).

In the case before the court, Plaintiff did not present the cost approach. Dayton determined a real market value of $1,056,000 (rounded), relying on "data [] obtained from the 2012 National Building Cost Manual information via an on-line web site that employed the December 2012 data focused on the subject and nearby zip code areas" and adjusting the data "back to 01/2011 using county-in-house information obtained from Multnomah County analysts." (Def's Ex A at 13.) Dayton stated in his report that "[t]he specific data generated is held within the county magistrate case file[.]" (*Id*.) That file was not submitted to the court and

/ / /

none of the data was verified or authenticated. The court gives no weight to Defendant's cost approach.

B.    *Sales comparison approach*

"Under the sales comparison approach, the value of a property is derived by 'comparing the subject property with similar properties, called comparable sales.' * * * That comparison is based on many factors, and adjustments are made for any differences between the comparable sales and the subject property so that the appraiser can derive a value for the subject property." *Magno*, 19 OTR at 58 (citations omitted). OAR 150-308.205(A)(2)(c) states in part that, "[i]n utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used." Thus, in order to determine the real market value of a property, "[t]he court looks for arm's length sale transactions of property similar in size, quality, age and location." *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003). The sales comparison approach is most useful in determining the subject property's value "where there are sufficient recent, reliable transactions to indicate value patterns or trends in the market." *The Appraisal of Real Estate* at 300.

In the case before the court, Plaintiff did not present a comparable sales approach. Dayton selected six properties that he concluded were comparable to the subject property and utilized a "multi-layered approach" to adjust the comparable properties' sale price. (Def's Ex A at 11.) The "comparable adjusted sale prices" ranged from $987,000 to $1,213,500 (rounded). (*Id*. at 13.) Dayton stated that "Comparable Two and Three were given the most primary consideration with Comparable One Strong secondary consideration as they all are located

/ / /

within Multnomah County." (*Id*.) Dayton concluded that "[t]he Market Approach opinion of value is $1,090,000.[]" (*Id*.)

Based on Plaintiff's testimony, Dayton incorrectly adjusted for one extra bedroom in the "below grade" living area. (*See id*. at 17-18.) Even though he acknowledged seeing the construction defects identified by Plaintiff, Dayton made no adjustment for the construction defects, stating that Plaintiff failed to provide bids or receipts. Dayton made no adjustment for topography even though Dayton's photographs show that Plaintiff's driveway and residence are suspended into a hillside and the comparable properties' driveways and living space are built on flat ground. (*See id*. at 26-29.) Dayton testified that he relied on a "street" inspection to confirm comparability of the properties to the subject property, without interior inspection even though he made condition adjustment in the amount of $10,000 to five of the six comparable properties. (*Id*. at 17-18.) Dayton made an adjustment for storage in the amount of $20,000 to each of the comparable properties even though Plaintiff disputed Dayton's conclusion that approximately 2,000 square feet could be converted to gross living area when a natural spring and plumbing were occupying that space. (*Id.*) Dayton did not perform an interior inspection to confirm that none of the comparable properties had storage comparable to what he determined was present in the subject property. (*Id.*) Defendant's comparable sales approach is inconclusive.

C.    *Burden of proof*

As the party seeking affirmative relief, Plaintiff bears the burden of proving that his subject property's real market value is incorrect on the tax roll. ORS 305.427. Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." *Schaefer v. Dept. of Rev.*, TC No 4530, WL 914208 at *2 (July 12, 2001) (citing *Feves v. Dept. of Rev.*, 4 OTR 302, 314 (1971)). Plaintiff must present the greater weight

of evidence to support his requested real market value reduction. This court has stated that "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)). Competent evidence includes, "appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents, and licensed brokers." *Danielson v. Multnomah County Assessor*, TC-MD No 110300D at 7 (Mar 13, 2012). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).

Plaintiff did not present any competent evidence of the subject property's real market value as of the date of assessment, such as an appraisal report or testimony of an appraiser, real estate broker or agent. Plaintiff relied on his experience as a builder to support the requested real market value. He relied on the real market value of neighboring parties that he stated were reported on PortlandMaps.com to show that the subject property is overvalued as of the assessment date. Plaintiff submitted no documents from PortlandMaps.com and made no adjustments to the properties for the any of the differences between the subject property and each property he identified as neighboring the subject property.

Plaintiff's evidence in support of his requested real market value reduction is inconclusive. When the "evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed*, 310 Or at 265. Unfortunately, Plaintiff failed to carry his burden of proof.

Even though Plaintiff failed to carry his burden of proof and the "burden of going forward with the evidence" has not shifted, the court has jurisdiction to determine the "real

market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.427; ORS 305.412. Dayton, a registered appraiser, submitted an adjusted comparable sales analysis for the subject property, adjusting the sale prices of the comparable properties, and a cost approach. (Def's Ex A at17, 19.) As previously stated, the court gives no weight to Dayton's cost approach. Dayton's comparable sales approach included adjustments disputed by Plaintiff and Dayton lacked personal knowledge or sufficient information to refute Plaintiff. The storage and condition adjustments are questionable given Dayton's lack of personal knowledge because he did not make interior inspections of the comparable properties. After considering the disputed adjustments, Dayton's range of adjusted sale prices are close to the real market value determined by the Multnomah County Board of Property Tax Appeals. The court does not accept Defendant's determination of the subject property's real market value based on the comparable sales approach.

## III. CONCLUSION

After careful review of the testimony and evidence the court concludes the Plaintiff failed to carry his burden of proof. The court accepts the Multnomah County Board of Property Tax Appeals determination of the 2011-12 subject property's real market value. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ___ day of April 2013.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*
*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Presiding Magistrate Jill A. Tanner on April 3, 2013. The court filed and entered this Decision on April 3, 2013.*