IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

CHADWICK B. MICHAELS,         )
                                     )
         Plaintiff,          )   TC-MD 130057N
                                     )
      v.                   )
                                     )
MARION COUNTY ASSESSOR,      )
                                   )
         Defendant.      )   **DECISION**

Plaintiff appeals the real market value of property identified as Account R58644 (subject property) for the 2008-09 through 2012-13 tax years. Defendant moved to dismiss Plaintiff's appeal for the 2008-09 through 2011-12 tax years, asserting that Plaintiff's appeal for those tax years was not timely filed. (Def's Ans at 1.) By Order issued April 9, 2013, the court dismissed Plaintiff's appeals for the 2008-09 and 2009-10 tax years because those tax years are beyond the court's jurisdiction under ORS 305.288. The court determined that jurisdiction exists under ORS 305.288(1) to consider Plaintiff's appeals for the 2010-11 and 2011-12 tax years. Plaintiff's appeal for the 2012-13 tax year was timely filed from an Order of the Marion County Board of Property Tax Appeals (BOPTA).

A trial was held in this matter on June 10, 2013, in the Oregon Tax Courtroom in Salem, Oregon. Plaintiff appeared and testified on his own behalf. Robb Witters (Witters), Senior Appraiser Residential Section, appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1-A, 1-B, 2-B, 3-D, 4-G, and 23-PO were received without objection. Defendant's Exhibit A was received without objection.

/ / /

/ / /

## I. STATEMENT OF FACTS

The subject property is "a single family residence with 2,752 square feet, seven bedrooms, and four bathrooms." (Def's Ex A at 1.) The subject property house was built in 1935 and an addition was made to the rear of the house in 1976. (*Id.*) The subject property lot is 0.61 acres. (*Id.*) The subject property is located in "a single family residential zone" with a "4,000 square foot minimum lot size requirement." (*Id.*) Witters noted that the subject property "site is larger than typical for its location and has the potential to be partitioned into additional, smaller parcels." (*Id.*) Witters characterized the subject property neighborhood in Northeast Salem as "fair." (*Id.*) Witters stated that a "fair neighborhood generally is comprised of smaller more modest homes with condition[s] ranging from average to poor, smaller parcel sizes, [and] a lack of sidewalks, and is more likely to be impacted by external adverse influences." (*Id.*)

The parties agree that the subject property was in poor condition as of each of the assessment dates at issue. Witters stated:

> "Based on information from [Plaintiff], as well as past visits to the [subject] property by [Defendant], the residence has experienced an extreme amount of wear and tear and is considered to be in poor condition. Items of note which contribute to the poor condition include areas which have no flooring or sub-flooring, exterior siding missing and in disrepair, and vermin infestation."

(Def's Ex A at 1.) Witters testified that the subject property improvement was uninhabitable during the tax years at issue. He testified that he considered the value of the subject property improvement to be its "storage value," which he determined to be $10,840.

Plaintiff testified that the subject property improvement includes lead paint, lead pipe joints, and asbestos floor and ceiling tiles. Witters responded that Plaintiff

> "has referenced the improvements having asbestos as well as being a drug lab or meth house. [Defendant] has no record of any asbestos. Additionally, according to the Marion County Sheriff's office, the property has no record of ever being a drug house of any type. The only record of the property being a 'meth house' the

sheriff's office has is from 2006 when 'meth house' was painted across the house."

(Def's Ex A at 1.)

Plaintiff testified that the subject property had no sewer, electric, or water as of the assessment dates at issue. Witters reported that the subject property "has access to public water and sewer," but agreed with Plaintiff that, as of the assessment dates at issue, "[those] utilities [had] been rendered inoperable." (Def's Ex A at 1.) Witters testified that, because the subject property did not have onsite developments as of January 1, 2012, Defendant recommended to BOPTA that the 2012-13 land real market of the subject property be reduced by $10,000 from $78,560 to $68,560. (See Ptf's Compl at 5 (BOPTA Order).)

Plaintiff testified that, in his view, the subject property's house had no value and should be torn down.[1] Based on that determination, Plaintiff testified that he sought to determine the "pristine bare land value" less the cost to demolish the house. Plaintiff testified that he reviewed land sales within five miles of the subject property and found the "total average of three properties" was $38,560. (See Ptf's Ex 3-D.) Plaintiff did not provide a list of the land sales that he reviewed or any other information about those sales. He testified that he researched land sales at the public library and was unable to print any information about the sales. Plaintiff determined that the "cost to haul away building, structures, [and] concrete," not including "cost to dig and dispose of asbestos sewer system and hazardous materials," is $34,397. (Ptf's Ex 1-A.) In support of that cost, Plaintiff provided a cost estimate of $34,000 from Rob Rousseau Construction, LLC dated November 22, 2011. (Ptf's Ex 1-B.) Plaintiff testified that the individual who provided the quote visited the subject property. Plaintiff requests a real

_____

[1] Plaintiff testified that, in 2007 or 2008, he inquired about having the subject property appraised and was told by the appraiser that he contacted that the subject property improvement was not worth anything.

market value of $4,163[2] based on the bare land value less the estimated cost of demolishing the subject property house. (Ptf's Compl at 1.)

Witters determined "that the highest and best use of the [subject] property is to rehabilitate the residence rather than demolish and rebuild a house." (Def's Ex A at 1.) He did not include a highest and best use analysis in his report. Witters testified that it was very difficult to complete an appraisal of the subject property given its poor condition. He testified that he looked for sales of comparable properties in poor condition and found three sales for each of the three tax years at issue. (*See* Def's Ex A at 3-6.) Witters testified that his Comparable Sale #2 for the 2010-11 tax year and his Comparable Sale #2 for the 2011-12 tax year were each demolished by the buyer shortly after sale. (*See id.* at 6.) He made adjustments to each of his sales for differences in location, "Site/Acreage," "Class/Quality of Construction," "Year Built/Condition," "Room Count,"[3] "Gross Living Area," Garage, and "OSD/Landscaping." (*See id.* at 3-6.) Witters testified that he was unable to bracket the subject property with respect to site size and gross living area. (*See id.* at 6.) His net adjustments are all positive and range from 7.1 percent to 78.0 percent. (*Id.* at 3-5.) The adjusted values of Witters' comparable sales ranged from $80,080 to $88,720 for the 2010-11 tax year; from $78,820 to $106,020 for the 2011-12 tax year; and from $78,760 to $91,490 for the 2012-13 tax year. (*Id.*)

The 2012-13 tax roll real market value of the subject property was $89,400, with $78,560 allocated to the land and $10,840 allocated to the improvements. (Ptf's Compl at 4.) Based on Defendant's recommendation, BOPTA reduced the 2012-13 real market value of the subject

---

[2] In his Complaint, Plaintiff reported the estimated demolition cost as $34,497, rather than $34,397, as stated in his exhibits. (*See* Ptf's Compl at 1.) Using the estimated demolition cost of $34,397 reported in Plaintiff's exhibits, Plaintiff's requested real market value is $4,163, not $4,063.

[3] Witters stated in his report that "[d]ifferences in bedroom count were not adjusted for as any adjustment necessary is accounted for in the living area adjustment. Differences in bathroom counts were adjusted $2,000 per full bathroom and $1,000 per half bathroom." (Def's Ex A at 6.)

property land to $68,560. (*See id.* at 5.) Plaintiff testified that he generally agrees with the 2012-13 real market value of $10,840 for the subject property improvements. The 2012-13 maximum assessed value of the subject property was $82,910. (*Id.*) The 2011-12 tax roll real market value of the subject property was $97,600, with $83,560 allocated to the land and $14,040 allocated to the improvements. (Ptf's Resp to Information Req at 4, Mar 5, 2013.) The 2011-12 maximum assessed value of the subject property was $80,500. (*Id.*) The 2010-11 tax roll real market value of the subject property was $101,980, with $83,560 allocated to the land and $18,420 allocated to the improvements. (*Id.* at 3.) The 2010-11 maximum assessed value of the subject property was $78,160. (*Id.*) Defendant requests that the real market value of the subject property be sustained for each of the three tax years at issue.

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2010-11, 2011-12, and 2012-13 tax years.[4] "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citations omitted). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."[5]

/ / /

---

[4] Plaintiff's appeal of the 2010-11 and 2011-12 tax years is allowed under ORS 305.288(1) (2009), which provides the court jurisdiction to reduce the value of property "for the current tax year or for either of the two tax years immediately preceding the current tax year, or for any or all of those tax years, if" there is an allegation of an error in value of at least 20 percent and it is attributable to property that was used "primarily as a dwelling."

[5] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009. The 2011 ORS are applicable for the 2012-13 tax year, but do not differ materially from the 2009 ORS and OAR provisions cited in this Decision.

The assessment date for the 2010-11 tax year was January 1, 2010; the assessment date for the 2011-12 tax years was January 1, 2011; and the assessment date for the 2012-13 tax year was January 1, 2012. ORS 308.007; ORS 308.210.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]" ORS 308.205(2). The three approaches of value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308.205-(A)(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.*

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.,* 18 OTR 324, 332 (2005) (citing *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiff failed to meet his burden of proof that the real market value of the subject property was $4,163 for the three tax years at issue. Plaintiff determined that the highest and best use of the subject property was as vacant land, but it is unclear how Plaintiff made that determination. He did not include a highest and best use analysis in his exhibits. Plaintiff testified that he researched land sales to determine the value of the subject property land if

vacant, but failed to provide any information about the land sales that he reviewed. The evidence provided by Plaintiff is insufficient to carry the burden of proof. Even though the burden has not shifted under ORS 305.427, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Witters failed to provide an analysis of the highest and best use of the subject property. He determined that the subject property house should be rehabilitated rather than demolished, but it is unclear how he made that determination. The parties agree that the subject property was in poor condition and was uninhabitable. Two of Witters' comparable sales were demolished shortly after purchase. Those sales tend to support Plaintiff's determination that the subject property house should be demolished. Unfortunately, the evidence presented is insufficient to determine whether the subject property house should be rehabilitated or demolished.

Witters relied on the sales comparison approach to determine the real market value of the subject property for each of the three tax years at issue. "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used." OAR 150-308.205-(A)(2)(c). "The court looks for arm's length sale transactions of property similar in size, quality, age and location * * * in order to determine the real market value[]" of the subject property. *Richardson*, WL 21263620 at *3.

Witters presented three sales for each of the three tax years at issue. However, the court is unable to discern a trend in the sale prices from January 1, 2010, to January 1, 2012. The prices of Witters' sales for the 2011-12 tax year were somewhat higher than the prices for the 2010-11 and 2012-13 tax years. No explanation for that difference was provided. The court received no evidence of changes in market conditions from January 1, 2010, to January 1, 2012.

It may be that the market for properties in poor condition, such as the subject property, did not change between January 1, 2010, and January 1, 2012. Based on the evidence presented, the court considers the real market value evidence presented for each of the three tax years at issue.

Witters' sales were in poor to fair condition. (Def's Ex A at 3-5.) He made adjustments to his comparable sales, including a $20 per square foot adjustment for gross living area and adjustments of "$2,000 per full bathroom and $1,000 per half bathroom." (*Id.* at 6.) Witters' appraisal report does not provide support for any of the adjustments made. The net adjustment to each of his sales was positive, suggesting that each of Witters' sales was superior to the subject property. (*See id.* at 3-5.) Most of Witters' largest adjustments were upward adjustments for gross living area, which ranged from $7,520 to $32,080. (*Id.*) Given Witters' testimony that the subject property improvement was valued as storage, the court is not persuaded that a gross living area adjustment of $20 per square foot is supported in this case. Witters reported that the subject property improvement included 2,752 square feet of gross living area. At $20 per square foot, the subject property improvement value would be $55,040. However, Witters testified that the subject property improvement could be used only for storage and determined its value was $10,840. Similarly, the court is not persuaded that Witters' adjustments for bathrooms are supported in this case. The court finds that Witters' real market value conclusions under the sales comparison approach are overstated.

Plaintiff testified that he generally agreed with the 2012-13 tax roll real market value of the subject property's improvements, $10,840. Based on the parties' agreement, the court finds that the real market value of the subject property's improvements was $10,840 for each of the three tax years at issue. In his sales comparison approach, Witters used two sales that were demolished shortly after purchase. (Def's Ex A at 6.) Because those properties were purchased

for the land only, those sales provide evidence of the real market value of the subject property land for the tax years at issue.

The first sale was a 0.19-acre property that sold for $45,000 on September 23, 2009. (Def's Ex A at 3.) Witters made upward adjustments to that sale of $9,000 for "Site/Acreage," $32,080 for "Gross Living Area," and $6,000 for "Room Count." (*Id.*) He made downward adjustments of $2,000 for a two-car garage and $10,000 for "OSD/Landscaping." (*Id.*) Adjusting only for differences in the land and site developments, the adjusted sale price is $44,000. The second sale was a 0.21-acre property that sold for $50,000 on November 3, 2010. (*Id.* at 4.) Witters made upward adjustments to that sale of $8,500 for "Site/Acreage," $27,320 for "Gross Living Area," $6,000 for "Room Count," and $2,000 for "Garage." (*Id.*) He made downward adjustments of $5,000 for "Location" and $10,000 for "OSD/Landscaping." (*Id.*) Adjusting only for differences in the land and site developments, the adjusted sale price is $43,500. Witters' two comparable sales that were demolished shortly after purchase indicate a value of $43,500 to $44,000 for the subject property land. Adding that to the real market value of the subject property's improvements indicates a total real market value of $54,840 for the subject property.

## III. CONCLUSION

After careful consideration, the court finds that Plaintiff failed to meet his burden of proof that the real market value of the subject property was $4,163 for the 2010-11 through 2012-13 tax years. Based on the evidence presented, the court finds that, for the 2010-11 through 2012-13 tax years, the real market value of the subject property was $54,840 with $44,000 allocated to the land and $10,840 to the improvements. Now, therefore,

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal of property identified as Account R58644 is dismissed for the 2008-09 and 2009-10 tax years because those tax years are beyond the court's jurisdiction under ORS 305.288.

IT IS FURTHER DECIDED that, for the 2010-11 through 2012-13 tax years, the real market value of property identified as Account R58644 was $54,840 with $44,000 allocated to the land and $10,840 to the improvements.

Dated this ___ day of July 2013.

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Allison R. Boomer on July 29, 2013. The court filed and entered this Decision on July 29, 2013.*